**HUNTINGTON NATIONAL BANK, Appellee,**

v.

**ROSS, Appellant, et al.; Gunner, Substituted Appellant.**

**HALL**

v.

**ROSS, Appellant; Huntington National Bank, Appellee,
et al.; Gunner, Trustee, Substituted Appellant.**

**HUNTINGTON NATIONAL BANK, Appellee,**

v.

**RESORT DEVELOPMENT, INC., et al., Appellants;
Gunner, Trustee, Substituted Appellant.**

[Cite as *Huntington Natl. Bank v. Ross* (1998), 130 Ohio App.3d 687.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 98AP–267, 98AP–268 and 98AP–269.

Decided Dec. 15, 1998.

688

*Jody Michelle Oster,* for Huntington National Bank.

*Leo P. Ross, pro se.*

---

T**YACK**, Judge.

This consolidated appeal stems from three separate complaints filed in the Franklin County Court of Common Pleas. On November 9, 1995, Bobbie M. Hall, Franklin County Treasurer, filed a complaint against Leo P. Ross, Jeaneen M. Ross, the Huntington National Bank ("HNB"), and various other defendants who might have claimed an interest in certain of the Rosses' properties. The treasurer sought foreclosure of the property due to delinquent taxes. HNB filed an answer, counterclaim, and cross-claim, averring, in part, that it was the holder of an open-end guaranty mortgage on the real property at issue, that the mortgage had been given as security for a continuing guaranty executed by the Rosses, that the Rosses were in default, and that it was entitled to have the mortgage foreclosed.

The treasurer subsequently withdrew her complaint, and all cross-claims remained pending. HNB obtained a default judgment against the Rosses, which was later vacated.

On April 11, 1996, HNB filed a complaint in foreclosure against the Rosses and various other defendants who might have claimed an interest in certain other real properties on which HNB had a mortgage executed by the Rosses as security for a second continuing guaranty. Both of the guaranties at issue were security for a commercial loan note in the original amount of $175,000. Mr. Ross's company, Resort Development, Inc. ("RDI"), had taken out the loan in order to open a hotel in Jamaica. HNB averred that the Rosses were in default under the terms of the note and guaranty and, therefore, were entitled to foreclosure on the second property.

The two foreclosure cases were eventually consolidated. The Rosses had asserted a cross-claim against HNB averring, essentially, that HNB had required the Rosses to obtain a political-risk insurance policy through the Overseas Private Investment Corporation ("OPIC") and assign any future claims under the policy to HNB. The Rosses claimed they had filed a claim under the policy and that HNB had a duty to mitigate its damages by pursuing the claim and thereby discharge the Rosses from their indebtedness to HNB.

The Rosses and HNB each moved for summary judgment. On November 14, 1996, the trial court rendered a decision, granting summary judgment in favor of HNB. The trial court found, in part, that the Rosses had signed absolute guaranties and were in default and that therefore HNB did not have to pursue a remedy from OPIC before pursuing the Rosses. Further, the trial court found that the Rosses had failed to bring forth evidence that any alleged assignment of the OPIC policy to HNB modified or superseded the terms of the notes, mortgages, and guaranties.

On December 6, 1996, the trial court filed a judgment entry and decree in foreclosure. The trial court noted in the judgment entry that any cross-claims remained pending. The Rosses filed a notice of appeal with this court; however, we dismissed the appeal, given the trial court's statement regarding pending cross-claims, for lack of a final, appealable order. On November 21, 1997, Mr. Ross, who had been proceeding *pro se* with his then wife, withdrew as counsel for Ms. Ross.

On February 17, 1998, the trial court filed a *nunc pro tunc* entry stating, in part, that it had ruled on all claims, cross-claims and counterclaims. On March 4, 1998, a *nunc pro tunc* judgment entry and decree in foreclosure was journalized. Mr. Ross has now appealed to this court.

On April 9, 1996, HNB had filed a complaint pursuant to warrants of attorney against RDI, Mr. Ross and Ms. Ross (common pleas court case No. 96CVH04–2621). HNB averred that certain notes executed by RDI and/or the Rosses were in default and that it was entitled to judgment by virtue of warrants of attorney and confessions of judgment. These notes arose out of and were part of the transactions at issue in the consolidated foreclosure actions.

Pursuant to the warrants of attorney and confessions of judgment, an answer was filed on April 9, 1996, wherein RDI and the Rosses waived issuance and service of summons, admitted the allegations in the complaint, and confessed judgment in favor of HNB. A judgment entry was journalized on April 10, 1996.

On December 4, 1997, the Rosses filed a motion to strike the pleadings, a motion to award attorney fees, and a motion to cite HNB for abuse of process. These motions were denied on February 11, 1998. On February 17, 1998, Mr.

Ross filed a motion for reconsideration, which was denied on February 26, 1998. On March 9, 1998, Mr. Ross filed a notice of appeal with this court.

On March 24, 1998, this court consolidated Mr. Ross's appeals.

On May 20, 1998, Mr. Ross filed a petition under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Ohio. Michael T. Gunner was appointed the Chapter 7 trustee.

On October 5, 1998, the trustee moved to substitute himself as the appellant in this consolidated appeal. On November 12, 1998, this court filed a journal entry granting the trustee's motion. As a result, the trustee has been substituted as appellant in place of Mr. Ross.

 Before reaching the merits of the appeals, we must first address the appeal in common pleas court case No. 96CVH04–2621, the case wherein HNB ("appellee") sued RDI, Mr. Ross and Ms. Ross on the notes. As indicated above, a judgment entry in that case was filed on April 10, 1996. This was a final, appealable order. However, Mr. Ross did not appeal from that judgment until March 9, 1998—almost two years later. Mr. Ross did file a motion to strike the pleadings on December 4, 1997, and this was denied. After the trial court denied Mr. Ross's motion for reconsideration, Mr. Ross filed the instant appeal.

The appeal in common pleas court case No. 96CVH04–2621 (case No. 98AP–269 on appeal) must be dismissed. We lack subject-matter jurisdiction over the matter because Mr. Ross did not timely appeal from the April 10, 1996 judgment entry. Everything that occurred after this final judgment entry (except for the garnishment proceedings) is a nullity. Further, even if any filing or entry is not a nullity, there is no final judgment entry from which to appeal (other than the April 10, 1996 judgment entry). There is no judgment entry for the February 26, 1998 decision denying Mr. Ross's motion for reconsideration.

Because Mr. Ross failed to timely appeal from the April 10, 1996 judgment entry in common pleas court case No. 96CVH04–2621, the appeal in case No. 98AP–269 must be dismissed.

We now turn to the appeals from the foreclosure actions. The trustee ("appellant") asserts the following assignments of error:

"1. The lower court erred in finding that the only defense available to a guarantor of an unlimited guaranty is payment of the note.

"2. The lower court erred in failing to find that HNB had induced or required RDI to acquire, for additional consideration paid, a policy of political risk insurance through the overseas private investment corporation as a surety on the loan agreement.

"3. The lower court erred in failing to find that Resort Development Inc. had assigned the political risk policy to HNB as a benefit to HNB under the third party beneficiary contract.

"4. The lower court erred in stating that defendant[']s only claim was that plaintiff had to first exhaust the political risk insurance claim and that there where [*sic*] no other alternative arguments.

"5. The lower court erred in finding that there are no issues of material fact presented by the defendants upon which reason minds could differ.

"6. The lower court erred in finding that defendants did not go beyond the allegations or denials contained in their pleadings and affirmatively demonstrate the existence of a genuine issue of material fact.

"7. The lower court erred in finding that the defendants have failed to come forward with any evidence in support of their claim that the note is not in default.

"8. The lower court erred in finding that there are no questions of material fact to dispute the issue as to whether the guaranties contained language that is absolute and unconditional.

"9. The lower court erred in finding that the defendants have failed to come forward with evidence which would raise a genuine issue of material fact as to whether the above described note, mortgage and guaranties were superseded and or modified by the third party beneficiary contract and assignment of the defendant[']s claims against the O.P.I.C. insurance policy.

"10. The lower court erred in failing to find that plaintiffs were estopped from asserting that there is no third party beneficiary contract to which plaintiff is a party.

"11. The lower court erred in terminating this matter without a hearing or determination on the merits, on appellant[']s counterclaims against the appellee, in violation of appellant['s] 14th amendment right of due process.

"12. The lower court erred in finding that there are no issues that require this matter be removed to the federal district court and that the overseas private investment corporation was not a necessary party.

"13. The lower court erred in failing to find that O.P.I.C. was a surety on the contract and that the appellee had in fact by its' [*sic*] own action or inaction, caused harm to the surety or increased the risk to the surety requireing [*sic*] the release of the surety and all mortgages related thereto.

"14. The lower court erred [in] case No. 96CVH04–2621 and case No. 96CVE04–2699 in failing to strike the pleadings from the file as barred by res judicata for failure of appellee to bring its' [*sic*] claim as a compulory [*sic*] counterclaim in case No. 95CVH04–7835."

■ We address appellant's twelfth assignment of error first. Appellant contends that the trial court erred in failing to join OPIC as a necessary party and remove the actions to federal district court. On July 30, 1996, appellant filed a motion to join OPIC as a necessary party. Further, appellant contended that federal district court was the proper forum, as OPIC was a United States government corporation.

The trial court denied appellant's motions, stating that the proper parties to a foreclosure action are those who have an interest in the properties and that OPIC had no interest in the properties. We agree with the trial court's ruling.

■ The two cases herein are state foreclosure actions. The holder of rights or interest in property is a necessary party to a foreclosure action. *Hembree v. Mid–America Fed. S. & L. Assn.* (1989), 64 Ohio App.3d 144, 152, 580 N.E.2d 1103, 1108. There is nothing in the record to show that OPIC had an interest in the properties at issue. Therefore, OPIC was not a necessary party, there was no basis for removal of the cases to federal district court, and the trial court correctly denied appellant's motions.

Accordingly, appellant's twelfth assignment of error is overruled.

■ In his fourteenth assignment of error, appellant contends that the trial court erred in failing to strike the pleadings in the second foreclosure action. Appellant contended below that the second foreclosure action was a compulsory counterclaim that appellee had to have asserted in the first foreclosure action. Appellant contends that since appellee failed to assert this second foreclosure claim in the first foreclosure action, appellee was barred from filing the second foreclosure action.

As· indicated above, the first foreclosure action was filed by the Franklin County Treasurer against appellee, appellant, and various other defendants. Thus, appellee and appellant were coparties. Appellee filed a cross-claim against appellant and the other defendants and a counterclaim against the treasurer, asserting its interest in the property at issue. On April 11, 1996, appellee filed a separate foreclosure action against appellant on different property. While the second foreclosure action involved a different mortgage on a different piece of property from the first foreclosure action, both arose out of related transactions.

Civ.R. 13 applies and states:

"(A) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any *opposing party,* if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the

presence of third parties of whom the court cannot acquire jurisdiction." (Emphasis added.)

Civ.R. 13(A), however, does not apply because in the foreclosure action brought by the treasurer, appellee, and appellant were not opposing parties; they were coparties. Rather, Civ.R. 13(G) applies, and states:

"Cross–Claim Against Co-party. A pleading *may* state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action." (Emphasis added.)

Hence, cross-claims (claims by one party against a coparty arising out of the same transaction that is the subject matter of the original action or counterclaim) are not compulsory or mandatory. Appellant asserts that once appellee filed a claim against appellant, they became adverse parties. However, this does not mean that appellee's claims were counterclaims and, therefore, compulsory. In the first action, appellee and appellant were coparties, and any related claims of appellee were permissive cross-claims. See *Sedlak v. Solon* (Oct. 26, 1993), Franklin App. No. 93AP–813, unreported, 1993 WL 435252.

Therefore, appellee was not required to bring the second foreclosure action as a compulsory counterclaim or cross-claim in the first foreclosure action. In addition, any arguments on the part of appellant regarding the principle of *res judicata* are not well taken, since the two foreclosure actions were consolidated, and the issues involved therein were litigated together.

Accordingly, appellant's fourteenth assignment of error is overruled.

█ Appellant's remaining assignments of error are interrelated and, therefore, will be addressed together. Essentially, appellant's remaining assignments of error assert various contentions as to why summary judgment in favor of appellee was erroneous. Nearly all of appellant's arguments center on the OPIC policy and appellee's alleged duty to mitigate its damages through a claim with OPIC. Appellee contends that appellant set forth no evidence to refute its argument that it was entitled to foreclosure given appellant's execution of absolute and unconditional guaranties with the mortgaged properties as security for the guaranties.

In order to grant summary judgment, the court must be satisfied, construing the evidence most strongly in favor of the nonmoving party, that there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, 942–943,

citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

The evidence in the record, construed most strongly in favor of appellant, establishes the following. On September 28, 1984, the Rosses executed a guaranty entitled "Continuing Guaranty Unlimited" as security for a $175,000 commercial loan taken out by appellant's business, RDI. As security for this guaranty, the Rosses executed an open-end guaranty mortgage on real property commonly known as 2302 Gardendale Drive.

Prior to the September 28, 1985 transaction, appellee sent appellant a letter confirming its interest in providing RDI a loan for the construction and operation of a hotel facility in Jamaica. Appellee indicated that it would require RDI to obtain insurance coverage from OPIC for political risks and exchange convertibility. RDI obtained such insurance. On September 28, 1984, appellant sent a letter to OPIC indicating that pursuant to RDI's loan agreement with appellee, RDI was thereby assigning all rights and interests in any claim made pursuant to RDI's contract with OPIC to appellee. OPIC was authorized to notify appellee of any claim made by RDI under the insurance contract.

Appellant contends that he filed a claim with OPIC in November 1984. The record indicates that appellant did inform OPIC of Jamaican government action that appellee believed was "creeping expropriation." However, the record also reflects that RDI and appellant continued to work on the hotel project.

Dudley Bryant, appellee's assistant vice president, stated in an affidavit that according to appellee's records, there was no assignment of any OPIC insurance policy as security for the note and that appellee had never received any payments from any such policy.

On March 8, 1985, the Rosses executed a second "Continuing Guaranty Unlimited" as security for the original note and RDI's other obligations to appellee. As security for this guaranty, the Rosses executed an open-end mortgage deed on real property commonly known as 2848–2850 Ruhl Avenue.

Appellee contends the that Rosses were in default and that under the terms of the guaranties and mortgages, it was entitled to proceed immediately against the Rosses (jointly and severally) and the properties put up as security. Indeed, the guaranties executed by the Rosses indicate that the Rosses unconditionally guaranteed the prompt and full payment to appellee of the obligations of RDI. The guaranties also provided that the Rosses agreed that appellee would not be required to pursue or exhaust any of its rights and remedies against RDI or the Rosses or to take any action of any sort prior to demanding payment from or pursuing its remedies against the Rosses. Further, if any obligation was not paid

when due, appellee could, at its option, collect any settlement it deemed appropriate with regard to the collateral.

The guaranties executed by the Rosses jointly and severally were unconditional and absolute. Therefore, appellee had no obligation to pursue or exhaust any other remedy prior to proceeding against the guarantors, the Rosses, and the security given for the guaranties.

Appellant contends that the OPIC insurance contract and the assignment to appellee of the benefits of the contract modified the above guaranties. However, there is no evidence to support that contention. There is no evidence that the guaranties or mortgages were modified or superseded. Indeed, even if we assume, arguendo, that an assignment of the OPIC policy did occur, this would not operate to modify the guaranties. As indicated above, the terms of the guaranties were that the Rosses unconditionally guaranteed payment of RDI's obligations, and appellee did not have to pursue or exhaust *any* remedy prior to looking to the Rosses. There is simply no evidence to show appellee had a duty to mitigate its damages by first pursuing a claim under the OPIC policy.

Further, appellant set forth no evidence raising a genuine issue as to any other defense or claim refuting appellee's claims under the guaranties and mortgages. Other than mere assertions, appellant produced no evidence that RDI was not in default of its obligations to appellee. There is no evidence that appellee breached any of the agreements between it and RDI and/or appellant or that appellee negligently administered the loan contract. In addition, appellant failed to raise a genuine issue of material fact as to his contentions regarding estoppel and laches.

Appellant failed to set forth evidence showing that appellee was not entitled to pursue its remedies against appellant pursuant to the guaranties and mortgages, including foreclosure of the properties. Hence, summary judgment in favor of appellee was appropriate. Accordingly, appellant's first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, and thirteenth assignments of error are overruled.

In his eleventh assignment of error, appellant contends that the trial court erred in terminating the matter without a hearing and/or without ruling on all of appellant's claims. This argument is without merit. The trial court clearly considered all of appellant's claims as well as the claims of every party. As to a hearing, the record is replete with appellant's arguments and accompanying documentation in support of his position. Further, there is no requirement for an oral hearing on motions for summary judgment. See *Klesch v. Reid* (1994), 95 Ohio App.3d 664, 672, 643 N.E.2d 571, 576–577; *Potter v. Troy* (1992), 78 Ohio App.3d 372, 378, 604 N.E.2d 828, 831–832.

For these reasons, appellant's eleventh assignment of error is overruled.

Having overruled each of appellant's assignments of error, we affirm the judgments of the Franklin County Court of Common Pleas in the foreclosure actions (appellate case Nos. 98AP–267 and 98AP–268). The appeal in case No. 98AP–269 is dismissed.

*Judgments affirmed in case Nos. 98AP–267 and 98AP–268; appeal dismissed in case No. 98AP–269.*

JOHN C. YOUNG and BOWMAN, JJ., concur.