[Cite as *Meredith v. ARC Indus., Inc. of Franklin Cty.*, 2024-Ohio-4466.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Christopher Meredith,                          :

     Plaintiff-Appellant,               :

                                   No. 24AP-117

v.                                             :      (C.P.C. No. 23CV-960)

ARC Industries, Inc. of Franklin County,       :
Ohio, et al.,
                                   (REGULAR CALENDAR)
                                       :

     Defendants-Appellees.              :

                                       :

D E C I S I O N

Rendered on September 10, 2024

**On brief:** *Schiff & Associates*, *Co.*, *L.P.A.*, *Terry V. Hummel* for Christopher Meredith. **Argued:** *Terry V. Hummel.*

**On brief:** *Michael J. McLane*, for ARC Industries, Inc. of Franklin County, Ohio. **Argued:** *Michael J. McLane.*

**On brief:** *Garvin & Hickey, LLC*, *Nathan P. Franzen*, *John D. Hance IV*, and *Michael J. Hickey*, for United Parcel Service, Inc.

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Plaintiff-appellant, Christopher Meredith, appeals from the January 18, 2024 judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, ARC Industries, Inc. of Franklin County, Ohio ("ARC Industries"). For the following reasons, we reverse.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2}    This matter arises from Mr. Meredith's May 9, 2019 slip and fall on the 23rd floor of the Vern Riffe State Office Tower (the "Riffe Center") while working as a delivery driver for defendant-appellee United Parcel Services, Inc. ("UPS").

{¶ 3}    In the five years preceding this incident, Mr. Meredith delivered packages daily to the Department of Commerce's ("department") mailroom—located on the 23rd floor of the Riffe Center.  (*See* Apr. 21, 2022 Christopher Meredith Dep. at 54-56, 97-98; Aug. 30, 2022 Robert Morgan Boggs Dep. at 6-7.)  To reach the mailroom, Mr. Meredith would take the freight elevator to the 23rd floor, walk approximately 35 yards on tile flooring to locked double doors, press the door's buzzer for access, and, once granted access, walk down a carpeted hallway to the department's mailroom.  Of note, this route was not used by the public, but rather, only by delivery drivers, cleaning staff, maintenance workers, building security, and department employees. (*See* Boggs Dep. at 21-22; Aug. 30, 2022 Kenneth McKinley Dep. at 51-52, 72-77, 82-87; Sept. 11, 2023 Douglas Meier Dep. at 11-12.)

### A.  Mr. Meredith's May 9, 2019 Slip and Fall

{¶ 4}    On May 9, 2019, between 9:30 and 10:30 a.m., Mr. Meredith delivered packages to the department's mailroom on the 23rd floor without issue.  (*See* Meredith Dep. at 54-64, 110-12; Boggs Dep. at 18. *See also* Sept. 11, 2023 Anthony Hartley Dep. at 15.)  He entered the department's office suite using one of the double doors and exited through the other double door.  As he was backing through the doorway with his delivery cart to exit the department's office suite (walking from the carpet on the suite-side of the double doors to the tile hallway leading to the freight elevator), Mr. Meredith described his right foot slipping out from under him as soon as he stepped on the tile, causing him to do "the splits" and fall straight to the ground. (Meredith Dep. at 66-69. *See also* Boggs Dep. at 15-16.)  On examination, Mr. Meredith discovered the bottom of his right shoe was wet from a substance on the carpet.  (Meredith Dep. at 67, 125-27.)  It was undisputed that Mr. Meredith was wearing appropriate anti-slip footwear on May 9, 2019.

{¶ 5}    No one witnessed Mr. Meredith fall, and it was not captured on surveillance video.  However, department employees ran to his aid when they heard him yelling out in pain.  One of the department's mailroom employees, Robert "Bobby" Boggs, described seeing Mr. Meredith lying on the tile floor "holding his leg up, just screaming" in agony

while his delivery cart was "half and half from the carpet to the tile." (Boggs Dep. at 15-16. *See also* Boggs Dep. at 32-33; McKinley Dep. at 44-45, 56-57.)

{¶ 6} Mr. Boggs and Mr. Meredith described observing other department employees "step[] off the carpet onto the tile and slip[]" while attempting to assist Mr. Meredith. (*See* Boggs Dep. at 16-20, 34, 36. *See also* Meredith Dep. at 123-24.) On investigation, Mr. Boggs and other department employees discovered the carpet near the door through which Mr. Meredith had exited was "very damp." (*See* Boggs Dep. at 16-17, 21, 27, 34. *See also* Meredith Dep. at 72-75, 123-24; McKinley Dep. at 29-30, 40-41.) Mr. Boggs estimated the area of wetness to be approximately three feet in diameter. (Boggs Dep. at 17, 39.)

{¶ 7} Nothing in the record suggests Mr. Meredith suspected or had any reason to suspect the patterned carpet near the exit of the department's 23rd floor office suite would be wet. Mr. Boggs described the wet spot on the carpet as latent, explaining he did not notice it until he observed his co-workers slipping on the tile after walking across it. (Boggs Dep. at 19-20.) Significantly, when Mr. Meredith fell, there were no "wet floor" signs posted in the area. (Meredith Dep. at 62, 117-18; Boggs Dep. at 20; McKinley Dep. at 62.) However, as depicted in a photograph taken by Mr. Boggs after the incident, a cautionary sign and fan were later placed in the area where Mr. Meredith slipped and fell.

{¶ 8} Emergency responders transported Mr. Meredith from the Riffe Center to the hospital. As a result of the fall, Mr. Meredith sustained a ruptured hamstring tendon in his left leg that ultimately required surgery and ten months of leave from work.

{¶ 9} The Riffe Center's head of security, Kenneth "Kenny" McKinley, investigated the incident but could not ascertain the cause of the wet carpet. (*See* McKinley Dep. at 48-49.) Of note, Mr. McKinley is employed by a private security company, Allied Universal—not ARC Industries—and the Riffe Center is one of the security company's contracted sites.

## B. Negligence Action Against ARC Industries

{¶ 10} After later learning from Riffe Center security guards and Mr. Boggs that the tiled hallway near the freight elevator had been "waxed" on the 23rd floor sometime before his fall (*see* Meredith Dep. at 71-72, 92-96, 127-28; McKinley Dep. at 26-27), Mr. Meredith initiated this action against the Riffe Center's cleaning service provider, ARC Industries, alleging negligence. In his complaint, Mr. Meredith asserted ARC Industries negligently

"failed [to] remove excess wax from the floor on which [he] fell," "caused or permitted to cause the floor to be slippery," "failed to inspect the floor where [Mr. Meredith] slipped and fell," "failed to warn [Mr. Meredith] of the slippery condition of the floor," or otherwise "caused or permitted to cause the floor to be more slippery than usual." (Feb. 13, 2023 Re-Filed Compl. at ¶ 2.)

{¶ 11} At all relevant times, ARC Industries was responsible for general housekeeping tasks on the 23rd floor of the Riffe Center, including mopping the tile floor adjacent to the freight elevator. (*See* July 26, 2023 Anthony Hartley Aff. at ¶ 2; Meier Dep. at 28, 49; McKinley Dep. at 78-79; Hartley Dep. at 7-8.) ARC Industries is "a company that supports developmental[ly] disabled adults"—referred to as "participants"—by providing them training to get jobs in the community while earning a paycheck from ARC Industries. (Meier Dep. at 6-7, 10, 15-17. *See also* Hartley Dep. at 7-11.)

{¶ 12} Direct service providers ("DSPs") are employees of ARC Industries who work with participants on a daily basis in a supervisory and training capacity while also performing housekeeping duties at the Riffe Center. Typically, at the time of this incident, participants worked on the same floor each shift, and DSPs were assigned to the same three floors each night.

{¶ 13} In May 2019, ARC Industries's cleaning staff had access to the department's 23rd floor office suite to collect trash, vacuum the carpet, and clean bathrooms. (*See* Boggs Dep. at 24, 29-31; Hartley Dep. at 8; McKinley Dep. at 57-58; Meier Dep. at 27-28, 43-44. *See also* Boggs Dep. Ex. 2.) The maintenance closet used by ARC Industries to store its cart and cleaning tools was located near the mailroom on the 23rd floor, within the confines of the department's office suite. (*See* Boggs Dep. at 24-26; McKinley Dep. at 58-62.)

{¶ 14} ARC Industries was also responsible for mopping the 23rd floor's tile flooring—including the floors of the bathrooms located within the department's suite—but it was not responsible for cleaning carpets. (*See* Anthony Hartley Aff. at ¶ 2; Hartley Dep. at 18; Boggs Dep. at 23-26; Meier Dep. at 28-29, 54-55.) Most mopping is done in the Riffe Center after 5:00 p.m., and each floor's tile flooring is mopped every other night by a participant or DSP employed by ARC Industries. (*See* McKinley Dep. at 54; Meier Dep. at 40-43.)

**{¶ 15}** In his deposition, Mr. Boggs described observing a supervisor unlocking the 23rd floor maintenance closet each evening "to set up to get their carts ready and stuff." (Boggs Dep. at 25.) While Mr. McKinley described this closet as containing a filling station for buckets, ARC Industries's community employment service manager, Douglas "Doug" Meier, stated that mop buckets were filled in the basements before the carts were taken up to each floor on the freight elevator. (*Compare* McKinley Dep. at 58-59, *with* Meier Dep. at 41-42.) During his deposition, Mr. Boggs explained that cleaning staff from ARC Industries use the freight elevator to "take their cleaning tubs and sometimes mops and stuff" when cleaning different floors—including the 23rd floor. (*See* Boggs Dep. at 21-22. *See also* McKinley Dep. at 58-59.) Fans for drying floors were also located in the basement and, if needed, would typically be brought up and operated by the DSP supervising that floor. (*See* Meier Dep. at 23-25.)

**{¶ 16}** Following extensive discovery and depositions in the course of the proceedings below, ARC Industries moved for summary judgment in July 2023 on the basis that Mr. Meredith cannot show ARC Industries was the proximate cause of his slip and fall. At issue was whether there was a genuine dispute of material fact that ARC Industries's cleaning staff proximately caused the hazard resulting in Mr. Meredith's injuries.

**{¶ 17}** On January 18, 2024, the trial court issued a written decision granting ARC Industries's motion for summary judgment. Mr. Meredith timely appealed from that judgment and raises the following sole assignment of error for our review:

> THIS COURT SHOULD REVERSE THE TRIAL COURT'S DECISION TO GRANT SUMMARY JUDGMENT BECAUSE THERE IS A GENUINE DISPUTE OF MATERIAL FACT AS TO WHETHER APPELLEE, ARC INDUSTRIES, IS LIABLE FOR APPELLANT, CHRISTOPHER MEREDITH'S INJURIES.

## II. ANALYSIS

**{¶ 18}** In his sole assignment of error, Mr. Meredith argues the trial court erred by granting ARC Industries's motion for summary judgment. He contends "[t]here are many possible causes for the wet carpet" at issue and that he "produced evidence from which the inference that ARC Industries is liable for [his] injuries can reasonably be drawn." (Appellant's Brief at 12, 18.)

### A. Summary Judgment Standard and Standard of Review

{¶ 19} Under Civ.R. 56(C), summary judgment is proper when the moving party establishes: (1) an absence of genuine issues of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) construing the evidence most strongly in favor of the non-moving party, reasonable minds could only find in favor of the moving party. *See, e.g., State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, ¶ 9; *Oliver v. Fox's Food, L.L.C.*, 10th Dist. No. 22AP-73, 2023-Ohio-1551, ¶ 9.

{¶ 20} Civ.R. 56(C) limits the types of materials a court may consider in ruling on a motion for summary judgment. Specifically, it provides that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Supporting and opposing affidavits submitted under Civ.R. 56(C) "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Civ.R. 56(E). Additionally, " '[o]nly facts which would be admissible in evidence can be * * * relied upon by the trial court when ruling upon a motion for summary judgment.' " *Guernsey Bank v. Milano Sports Ents., L.L.C.*, 177 Ohio App.3d 314, 2008-Ohio-2420, ¶ 59 (10th Dist.), quoting *Tokles & Son, Inc. v. Midwestern Indem. Co.*, 65 Ohio St.3d 621, 631 (1992), fn. 4.

{¶ 21} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record that demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the non-moving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the non-moving party has no evidence to support the non-moving party's claims. *Oliver* at ¶ 9, citing *Dresher* at 293, and *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997).

{¶ 22} If the moving party has satisfied its initial burden under Civ.R. 56(C), then the non-moving party " 'has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific

facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' " *Heimberger v. Zeal Hotel Group Ltd.*, 10th Dist. No. 15AP-99, 2015-Ohio-3845, ¶ 14, quoting *Dresher* at 293. The non-moving party may not rest on the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material that shows the existence of a genuine dispute over the material facts. *A.M. v. Miami Univ.*, 10th Dist. No. 17AP-156, 2017-Ohio-8586, ¶ 30, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991). In the summary judgment context, a "material" fact is one that might affect the outcome of the case under the applicable substantive law. *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993). A genuine dispute exists if the evidence presents a sufficient disagreement between the parties' positions. *Id.*

{¶ 23} We review decisions granting summary judgment de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 5. Under the de novo standard of review, we apply the same legal standard as the trial court but conduct an independent review of the evidence without deference to the trial court's decision. *See, e.g.*, *Gabriel* at ¶ 12; *Nazareth Deli L.L.C. v. John W. Dawson Ins. Inc.*, 10th Dist. No. 21AP-394, 2022-Ohio-3994, ¶ 22. "We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it." *Riverside v. State*, 190 Ohio App.3d 765, 2010-Ohio-5868, ¶ 17 (10th Dist.), citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶ 24} It is well-established, however, that "on a summary-judgment motion, any inferences regarding the evidence, including the resolution of ambiguities or inconsistencies, must be made in a manner that favors the nonmoving party." *Smathers v. Glass*, 172 Ohio St.3d 84, 2022-Ohio-4595, ¶ 32, citing Civ.R. 56(C) and *Wills v. Frank Hoover Supply*, 26 Ohio St.3d 186, 188 (1986) ("In reviewing a motion for summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the opposing party."). Because ARC Industries "sought to resolve this case on summary judgment, the evidence in this case could not be weighed." *Id.* Indeed, "we are required not only to construe evidence in a light most favorable to nonmoving parties but to also resolve inferences which may reasonably be drawn from the evidence in

favor of nonmoving parties." *Thompson v. Ohio State Univ. Physicians, Inc.*, 10th Dist. No. 10AP-612, 2011-Ohio-2270, ¶ 16, citing *McCarthy v. Robinson*, 10th Dist. No. 94APE05-619, 1994 Ohio App. LEXIS 5348 (Dec. 1, 1994). Thus, " '[w]here competing inferences may be drawn or where the facts presented are uncertain or indefinite, summary judgment is not appropriate and such matters must be left to the trier-of-fact.' " *Id.*, quoting *Sprouse v. Allstate Ins. Co.*, 10th Dist. No. 89AP-131, 1989 Ohio App. LEXIS 3990 (Oct. 17, 1989), citing *Duke v. Sanymetal Prods. Co.*, 31 Ohio App.2d 78 (8th Dist.1972). *See also Smathers* at ¶ 32 ("When factual ambiguities exist, inferences must still be resolved in favor of the nonmoving party.").

### B. Application

{¶ 25} Mr. Meredith asserted a negligence claim against ARC Industries based on his theory that his slip and fall on carpet was proximately caused by ARC Industries's actions while mopping the nearby tile flooring the night before.

{¶ 26} To establish negligence, a plaintiff must prove: (1) the existence of a duty; (2) a breach of that duty; and (3) an injury proximately resulting from the breach. *See, e.g.*, *A.M.*, 2017-Ohio-8586 at ¶ 32; *Kiser v. United Dairy Farmers*, 10th Dist. No. 22AP-539, 2023-Ohio-2136, ¶ 10.

{¶ 27} During his April 2022 deposition, Mr. Meredith admitted he did not know, for sure, what caused the carpeted area to be wet on May 9, 2019. Mr. Meredith maintained the wet substance was not on the carpet when he brought deliveries to the department's mailroom 24 hours earlier, and nothing in the record before us contradicts that claim. (*See* Meredith Dep. at 127, 130-31.) Admittedly speculating, Mr. Boggs opined during his August 2022 deposition that the wet carpet he encountered on May 9, 2019 "looked like it was like half a bucket of water or something." (*See* Boggs Dep. at 37-39.) But, Mr. Boggs conceded that, even on closer examination, he was unable to identify the liquid as any particular substance and did not know, for certain, how it got there. (*See* Boggs Dep. at 16-17, 19-20, 26-27, 34, 37-39.)

{¶ 28} Mr. McKinley also never learned what caused the 23rd floor's carpet to be wet on May 9, 2019, explaining this was "probably the first time [he] noticed water in that particular location" during the many years he worked in the Riffe Center. (*See* McKinley Dep. at 47-48. *See also* McKinley Dep. at 77-78.) However, his recollection of events

undermined Mr. Meredith's theory that the wetness was caused by ARC Industries's cleaning staff mopping the tile floor the night before.  During his August 2022 deposition, Mr. McKinley recounted radioing housekeeping shortly after Mr. Meredith fell to ask whether the floor had been waxed the prior night. (McKinley Dep. at 27.)  According to Mr. McKinley, "housekeeping verified that the floor was not waxed, was not mopped or anything that night." (McKinley Dep. at 26-27.  *See also* McKinley Dep. at 55, 57.)  As discussed more below, the trial court's decision granting ARC Industries's motion for summary judgment relied heavily on Mr. McKinley's hearsay account of housekeeping's attestation. (*See* Jan. 18, 2024 Decision and Entry at 2, 4-5.)

{¶ 29}  Setting aside any concerns about the admissibility of this hearsay evidence at trial—and there are several—Mr. McKinley clearly received bad information.  The affidavit from ARC Industries's Chief Financial Officer, Anthony Hartley, filed contemporaneously with ARC Industries's July 2023 summary judgment motion, directly refuted the veracity of Mr. McKinley's hearsay statements in his August 2022 deposition regarding when the floors were cleaned.  Specifically, Mr. Hartley averred that "[t]he [tile] floor outside the carpeted area where [Mr. Meredith] alleges he fell [on the morning of May 9, 2019] *was mopped during the second shift on May 8, 2019*" by an employee of ARC Industries. (Emphasis added.) (Hartley Aff. at ¶ 5.)

{¶ 30}  Notwithstanding this credible evidence *directly from the moving party* suggesting a proximate cause between the wet carpet and ARC Industries's mopping on the 23rd floor the day before, the trial court granted summary judgment in ARC Industries's favor without reference to material statements contained in Mr. Hartley's affidavit.  Instead, the trial court's relevant findings were based on Mr. McKinley's deposition testimony recounting inadmissible hearsay: that Mr. McKinley "verified" with some unidentified person in the housekeeping division via radio communications on May 9, 2019 that the tile floor on the 23rd floor was neither mopped nor waxed the night before.  (*See* Decision and Entry at 2, citing McKinley Dep. at 26-27.)  There is no indication as to how or from whom the unidentified housekeeping personnel obtained this information.  And, as described above, Mr. McKinley received bad information.  Further, Mr. Hartley's affidavit was executed almost one year *after* Mr. McKinley was deposed.

{¶ 31} When ruling on a motion for summary judgment, a trial court cannot rely on facts contained in inadmissible evidence. *See Ocwen Loan Servicing*, *L.L.C. v. Graf*, 10th Dist. No. 17AP-361, 2018-Ohio-2411, ¶ 21, quoting *Guernsey Bank* at ¶ 20, quoting *Tokles & Son* at 631, fn. 4. Accordingly, " ' "[h]earsay statements, unless an exception to the hearsay rule [applies], are not admissible evidence in a summary judgment context." ' " *Ocwen Loan Servicing* at ¶ 38, quoting *Guernsey Bank* at ¶ 59, quoting *Paulino v. McCary*, 10th Dist. No. 04AP-1186, 2005-Ohio-5920, ¶ 6, fn. 1, and citing *Ullmann v. Duffus*, 10th Dist. No. 05AP-299, 2005-Ohio-6060, ¶ 23; *Jones v. Greene Countrie Apts.*, 10th Dist. No. 94APE01-105, 1994 Ohio App. LEXIS 2587 (June 14, 1994). For these reasons, we conclude Mr. McKinley's inadmissible hearsay testimony that ARC Industries did not mop the 23rd floor the night before Mr. Meredith slipped and fell cannot be considered when analyzing the proximate cause issue raised in ARC Industries's summary judgment motion.

{¶ 32} The trial court also misunderstood the scope of Mr. Meredith's burden in this case. Contrary to the trial court's statement, Mr. Meredith was not required to prove what liquid substance he slipped on or how it got on the floor in order to overcome ARC Industries's summary judgment motion. Unlike in most slip-and-fall cases—including those relied on by the trial court in its decision—Mr. Meredith did not allege negligence on the basis of premises liability, and ARC Industries did not seek summary judgment on the elements of duty or breach. Rather, Mr. Meredith alleged that ARC Industries's actions in mopping the 23rd floor were negligent, and ARC Industries contended in its summary judgment motion that "[Mr.] Meredith cannot show that [ARC Industries] was the proximate cause of his slip and fall." (July 26, 2023 Mot. for Summ. Jgmt. at 6.) Thus, to refute this claim, Mr. Meredith only needed to establish a nexus between the actions of ARC Industries's cleaning staff and the wet, slippery carpet he encountered on the 23rd floor. *See*, *e.g.*, *Sharp v. Andersons*, *Inc.*, 10th Dist. No. 06AP-81, 2006-Ohio-4075. And, unlike in most premises-liability cases—where the store aisle, parking lot, or sidewalk containing a slip-and-fall hazard is generally accessible to the public—the hazardous area in this case was accessible to only a limited number of people.

{¶ 33} It is generally true, as the trial court noted, that a non-movant cannot meet his reciprocal burden of demonstrating a genuine issue of material fact remains for trial by

relying upon mere speculation or conjecture. But, we find the evidence in this case is neither speculation nor conjecture.

{¶ 34} In his affidavit, Mr. Hartley averred "[t]he [tile] floor outside the carpeted area where [Mr. Meredith] alleges he fell [on the morning of May 9, 2019] was mopped during the second shift on May 8, 2019" by an employee of ARC Industries. (Hartley Aff. at ¶ 5.) Significantly, ARC Industries filed Mr. Hartley's affidavit as evidence in support of its summary judgment motion. Thus, by its own evidence of statements made by its employee, we find there is no genuine issue of material fact that ARC Industries mopped the 23rd floor's tile floors during the second shift on May 8, 2019 and that the nearby carpet was wet on the morning of May 9, 2019. Viewing this evidence in the light most favorable to Mr. Meredith, we conclude Mr. Hartley's affidavit reasonably supports an inference that the liquid upon which Mr. Meredith slipped on the morning of May 9, 2019 was from the mopping performed on the 23rd floor by an ARC Industries's employee during the second shift on May 8, 2019. Construing this inference in the light most favorable to Mr. Meredith—as is our role at the summary judgment stage, *see Thompson*, 2011-Ohio-2270, at ¶ 16; *Smathers*, 2022-Ohio-4595, at ¶ 32—and given the inconclusive evidence and factual ambiguity regarding how the liquid got onto the carpet, it cannot be said that employees of ARC Industries did not act negligently in causing liquid to accumulate on the carpet where Mr. Meredith slipped and fell.

{¶ 35} Based on the foregoing, we conclude that the trial court erred in making factual determinations about what the evidence established, in several respects. *See Smathers* at ¶ 32 (explaining that, in the summary judgment context, "[d]etermining whether issues of disputed fact exist is different from making findings of facts"). First, after setting forth the standard for assessing evidence of breach in cases alleging negligence under a premises liability theory—wholly irrelevant to its analysis of ARC Industries's motion for summary judgment on the issue of proximate cause—the trial court listed facts it was relying on to determine that ARC Industries "has met its initial burden by presenting the Court with convincing, undisputed evidence demonstrating [Mr. Meredith's] inability to meet the test for establishing [ARC Industries's] negligence." (Decision and Entry at 4.) Most were only relevant to establishing a premises liability theory of negligence, which was not alleged here. (*See* Decision and Entry at 4.) ("[Mr. Meredith's] deposition testimony

confirms he does not know what he slipped in.  He also does not know how the substance got on the floor or how long it had been present.  Without any of this crucial information * * * he cannot establish actionable negligence.").

{¶ 36} True, evidence establishing when the liquid was spilled onto the floor would be relevant to evaluating the issue of proximate cause.  But, contrary to the trial court's finding otherwise, unrefuted evidence established the carpet had been wet for less than 24 hours.  Significantly, too, Mr. McKinley confirmed he could not find a leak above the 23rd floor or any nearby water overflows that would have caused the carpet in front of the department's office suite doors to be wet.  The area is not accessible to the public and the weather on May 9, 2019 was described, without rebuttal, as dry.  No evidence presented suggested the wet carpet was caused by a spill from a department employee.  And, Mr. McKinley himself described ARC Industries's employees using "those water buckets with the wheels" which, if overfilled, could have spilled when being pushed.  (McKinley Dep. at 48-49, 53-54.)  Notably, unrefuted testimony established the maintenance closet used by ARC Industries was located within the department's carpeted 23rd floor suite and that, in addition to the tile flooring outside of the department's suite, ARC Industries was also responsible for mopping the tile floors in the bathrooms located within the department's suite.  Furthermore, there was no indication a third-party carpet cleaning vendor worked on the 23rd floor on May 8 or 9, 2019.

{¶ 37} Given the inconclusive evidence regarding the source of the liquid and Mr. Hartley's affidavit statements establishing that employees of ARC Industries mopped on the 23rd floor during the second shift on May 8, 2019, the trial court erred in finding there was no genuine issue of material fact as to whether the water on which Mr. Meredith slipped on May 9, 2019 was from the mopping by ARC Industries's employees the night before. Thus, reviewing the grant of summary judgment de novo, we conclude that ARC Industries failed to satisfy its initial burden of demonstrating no genuine issue of material fact remained as to whether ARC Industries's mopping of the 23rd floor's tile floor on May 8, 2019 caused the latent accumulation of liquid on the contiguous carpeted area where Mr. Meredith slipped and fell on the morning of May 9, 2019.  The evidence submitted by Mr. Meredith established a sufficient nexus between the conduct of ARC Industries's employees on the night of May 8, 2019 and the wet, slippery carpet that caused Mr. Meredith's slip and

fall injuries on the morning of May 9, 2019.  Because we find there is a genuine issue of material fact as to whether the puddle on which Mr. Meredith slipped was created by an employee of ARC Industries, summary judgment was improper in this case. While it remains to be seen whether Mr. Meredith can prove, by a preponderance of the evidence, all elements of his negligence claim, we nonetheless conclude that reasonable minds could reach different conclusions on whether the negligence of ARC Industries's employees caused Mr. Meredith to slip and fall.  As such, we conclude the trial court erred in granting ARC Industries's motion for summary judgment on the issue of proximate cause.

{¶ 38}  For these reasons, we sustain Mr. Meredith's sole assignment of error.

## III. CONCLUSION

{¶ 39}  Having sustained Mr. Meredith's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings consistent with this decision.

*Judgment reversed*; *cause remanded.*

DORRIAN and LUPER SCHUSTER, JJ., concur.