**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| DEANNA SUTTON | Case No. 2024-00832JD |
| Plaintiff | Judge Lisa L. Sadler |
| | Magistrate Robert Van Schoyck |
| v. | |
| | <u>DECISION</u> |
| OHIO DEPARTMENT OF | |
| REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff brings this action for defamation and negligence arising from communications that defendant made to her employer in the course of an employment background screening, as well as from defendant suspending her visitation and communication privileges with her husband, an inmate at the Trumbull Correctional Institution (TCI).

{¶2} On November 6, 2025, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). Plaintiff filed a response on December 11, 2025. Defendant filed a reply on December 18, 2025. The motion is now before the Court for a non-oral hearing pursuant to Civ.R. 56 and L.C.C.R. 4. For the reasons explained below, the motion shall be granted.

**Standard of Review**

{¶3} Civ.R. 56(C) states, in part, as follows:

{¶4} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to

but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty*., 2004-Ohio-7108, ¶ 6, citing *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317 (1977).

{¶5} "The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact." *Starner v. Onda*, 2023-Ohio-1955, ¶ 20 (10th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). "The moving party does not discharge this initial burden under Civ.R. 56 by simply making conclusory allegations." *Id.* "Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.* "Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial." *Hinton v. Ohio Dept. of Youth Servs.*, 2022-Ohio-4783, ¶ 17 (10th Dist.), citing *Dresher* at 293; *Vahila v. Hall*, 77 Ohio St.3d 421, 430 (1997); Civ.R. 56(E).

**Factual Background**

{¶6} In a deposition transcript submitted by defendant in support of its motion, plaintiff states that her husband, Jeron Sutton, has been an inmate in the custody of defendant at TCI since 2021. (Plaintiff's Deposition, p. 26.) Plaintiff states that on July 24, 2023, the Lucas County Sheriff's office hired her in a part-time role as a nurse at the Lucas County jail. (Plaintiff's Deposition, pp. 36-38.) In an affidavit submitted by plaintiff, she avers that she became a full-time employee on January 29, 2024. (Plaintiff's Affidavit, ¶ 4.) Plaintiff acknowledges in her affidavit that when the Lucas County Sheriff's office hired her, she was notified that the conditions of her employment included, among other things, "ongoing background screening." (Plaintiff's Affidavit, ¶ 2.)

{¶7} Plaintiff states she "was placed on paid administrative leave on April 12, 2024, by Lucas County Sherriff's Office Internal Affairs Bureau." (Plaintiff's Affidavit, ¶ 20.) The reason for this, plaintiff relates, is that "during a background investigation, Lucas County

Sherriff's office obtained information from Defendant-Department of Rehabilitation and Correction which showed an active investigation into me and my husband." (Plaintiff's Affidavit, ¶ 19.) Plaintiff states that her "husband was later found guilty of extortion by Defendant-Department of Rehabilitation and Correction, but I had nothing to do with any specific allegation proven against him." (Plaintiff's Affidavit, ¶ 9.) Plaintiff states that the Lucas County Sheriff's office subsequently terminated her employment, but she challenged the termination through a union grievance process and was reinstated, with backpay, in July 2024. (Plaintiff's Deposition, pp. 44-45, 51, 63.)

{¶8} Plaintiff further states that on "April 17, 2024, Defendant-Department of Rehabilitation and Correction suspended my and my children's visiting and communication privileges at Defendant's prison which eliminated seeing and communicating with my husband . . . for a year." (Plaintiff's Affidavit, ¶ 26-27.)

{¶9} Plaintiff brings this action for defamation, based on defendant allegedly making "false and defamatory statements . . . that Plaintiff had acted as a co-conspirator with her husband in an extortion scheme", and for negligence, based on defendant's "negligence in its investigation and publication of the allegations against Plaintiff . . . ." (Complaint, ¶ 23, 40.)

**Analysis**

**A. Defamation**

{¶10} To establish defamation, "a plaintiff must show (1) the defendant made a false statement, (2) the statement was defamatory, (3) the statement was published, (4) the plaintiff was injured as a result of the statement, and (5) the defendant acted with the required degree of fault." *Webber v. Ohio Dept. of Pub. Safety*, 2017-Ohio-9199, ¶ 36 (10th Dist.).

{¶11} Defendant, in its motion for summary judgment, argues that "the allegedly defamatory statements are protected by qualified privilege . . . ." (Motion, p. 5.) "One of the defenses to a defamation claim is one of qualified privilege, in which the interest that the defendant is seeking to vindicate is conditioned upon publication in a reasonable manner and for a proper purpose." *DeGarmo v. Worthington City Schools Bd. of Ed.*, 2013-Ohio-2518, ¶ 18 (10th Dist.). "'A qualified privilege is an affirmative defense to a

claim of defamation.'" *Hill v. Ohio Dept. of Rehab. & Corr.*, 2021-Ohio-561, ¶ 17 (10th Dist.), quoting *Morrison v. Gugle*, 142 Ohio App.3d 244, 258 (10th Dist. 2001).

{¶12} Concerning the nature of communications subject to a qualified privilege, the Tenth District Court of Appeals has explained:

> The purpose of a qualified privilege is to protect speakers in circumstances where there is a need for full and unrestricted communication concerning a matter in which the parties have an interest or duty. *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 246, 331 N.E.2d 713 . . . . A qualified privilege exists when a statement is: made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.

*Fischer v. Kent State Univ.*, 2015-Ohio-3569, ¶ 25 (10th Dist.) (quotations omitted).

{¶13} "'"It is generally held that if the defendant publishes the defamatory words to the person interested at the latter's request or solicitation, there is such a relationship between the parties to justify the communication."'" *Hahn* at 246, quoting *West v. Peoples Banking & Trust Co.*, 14 Ohio App.2d 69, 74 (4th Dist. 1967), quoting 1 Harper and James, The Law of Torts, page 445, Section 5.26.

{¶14} "A qualified privilege may be defeated only if a claimant proves with convincing clarity that the publisher acted with actual malice." *Jackson v. Columbus*, 2008-Ohio-1041, ¶ 9. "In a qualified privilege case, 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Jacobs v. Frank*, 60 Ohio St.3d 111, (1990) at paragraph two of the syllabus. "The phrase 'reckless disregard' applies when a publisher of defamatory statements acts with a 'high degree of awareness of their probable falsity' or when the publisher 'in fact entertained serious doubts as to the truth of his publication.'" *Alford v. Ohio Dept. of Rehab. & Corr.*, 2024-Ohio-19, ¶ 22 (10th Dist.), quoting *Jackson* at ¶ 10. "Evidence that establishes, at best, the publisher 'should have known' of the alleged falsity of the statement is insufficient to establish actual malice." *Id.*, quoting *Varanese v. Gall*, 35 Ohio St.3d 78, 82 (1988).

{¶15} In support of its motion, defendant submitted affidavits from TCI Investigator Waylon Wine and TCI Assistant Investigator Jeffrey Cintron.  In his affidavit, Cintron avers, in part:

4.      Incarcerated people are required to comply with DRC's rules.  The rules exist to maintain the safety and security of DRC's institutions.

5.      Within my role as an Assistant Investigator I am responsible for investigating when I learn of a potential rule violation.  When I've concluded my investigation, I must fill out a Conduct Report, explaining my investigation and the rule violation.

6.      When I've completed a conduct report, the Rules Infraction Board reviews all the information and, if appropriate, sanctions the incarcerated person.

7.      Jeron Sutton was admitted to the State's custody on or about July 19, 2021. At all times relevant to this lawsuit, Jeron Sutton was incarcerated at Trumbull Correctional Institution.

8.      In February 2024, I began investigating whether Jeron Sutton violated DRC rules concerning illegal dealing and extortion by violence utilizing the GTL messaging system.  I concluded that he did violate the rules and completed a Conduct Report on April 16, 2024.  The Report is part of the Rules Infraction Board packet, attached as Exhibit A.

9.      Part of my investigation revealed messages between Jeron Sutton's wife, Deanna Sutton, and another incarcerated person, IP Pope, at another DRC institution.  Based on my professional experience, it appeared that Deanna Sutton was using the GTL messaging system to facilitate a conversation between Jeron Sutton and IP Pope.

10.    During this period of time, concerning Jeron Sutton and Deanna Sutton, I spoke only with those necessary to conduct my investigation and reported only to DRC staff authorized to receive the information.  Moreover, I did not speak with any non-DRC employee or any other incarcerated persons concerning these events.

11.     I have never, to my knowledge, made any untrue statements, oral or written, about Jeron Sutton or Deanna Sutton, and any statements I have made about them were made as part of my official duties and to maintain safety and security for DRC.

As Cintron states, a copy of the Rules Infraction Board packet is attached to his affidavit. The packet includes the April 16, 2024 Conduct Report in which Cintron charged Jeron Sutton with several rules infractions, and which contained the following reference to plaintiff: "Further investigation into Sutton A782159 has also revealed a conspiracy to transfer funds, verified through GTL messages facilitated by Deanna Sutton (wife) and IP Pope A665602 (SOCF)." (Cintron Affidavit, PDF p. 3.) The packet also includes summaries of testimony before the Rules Infraction Board, the Disposition of the Rules Infraction Board affirming all the rules infractions charged by Cintron, a Notice of Disciplinary Appeal and supporting documentation submitted by Jeron Sutton, and a Legal Services Decision on Appeal denying Jeron Sutton's appeal.

{¶16} Investigator Waylon Wine avers in his affidavit, in part:

5.     On April 12, 2024, Detective Sergeant Dave Kowalski of the Lucas County Sheriff's Office emailed me requesting information about Deanna Sutton, spouse of Jeron Sutton, as part of the background check he was conducting.

6.     That day, I responded with the information he requested. My response included records from the ongoing investigation into Jeron Sutton, which Deanna was connected to, visitor logs from her visits to DRC, messages between Deanna and multiple incarcerated people, her email and instant messaging contacts in our system, and call logs. A copy of our email exchange is attached as Exhibit B.

7.     Part of DRC's investigation into Jeron Sutton revealed messages between Jeron Sutton's wife, Deanna Sutton, and another incarcerated person, IP Pope, at another DRC institution. Based on my professional experience, it appeared that Deanna Sutton was using the GTL messaging system to facilitate a conversation between Jeron Sutton and IP Pope.

8.    As related to my April 12, 2024, email regarding Deanna Sutton that is at issue in this lawsuit, I responded with only the information that Detective Sergeant Kowalski requested and included DRC staff as needed for record keeping.

9.    I have never, to my knowledge, made any untrue statements, oral or written, about Deanna Sutton, and any statements I have made about her were made as part of my official duties and to maintain safety and security for DRC.

As Wine states in the affidavit, attached to it as Exhibit B are copies of the materials that he sent to Detective Sergeant Kowalski with the Lucas County Sheriff's office, as well as Kowalski's original request for any information about Jeron Sutton and plaintiff which he sought as part of a background investigation of plaintiff.  Included in the materials that Wine forwarded to Kowalski was information about his office's investigation into Jeron Sutton and others, including a statement that the investigation "has also revealed a conspiracy to transfer funds, verified through GTL messages facilitated by Deanna Sutton."  (Wine Affidavit, PDF p. 22.)  Wine forwarded to Kowalski evidentiary materials on which his office relied, including messages sent through the GTL messaging system between plaintiff and Jeron Sutton, and between plaintiff and inmate Pope.  There are messages to plaintiff from both Pope and Jeron Sutton that appear to concern relaying messages to others about financial transactions.  For example, there is an April 2, 2024 message from Jeron Sutton saying "Tell him heavy said he gave him a deal for 200 or something like that n he sent it b4 he left the cell with him", and an April 9, 2024 message from Pope saying "God bless hope all is well have you got a chance to talk to Ron Ron and tell him to please get my money from Heavy".  (*Id.* at PDF p. 16.)

{¶17} Cintron and Wine explain in their affidavits that, based on such evidentiary materials, they believed that their respective statements about plaintiff in Cintron's Conduct Report and in Wine's correspondence with the Lucas County Sheriff's office were true.

{¶18} Upon review, defendant met its burden at the summary judgment stage of coming forward with evidence demonstrating the essential elements of a qualifiedly privileged communication, as Cintron's statement about plaintiff in the Conduct Report

that he wrote and Wine's statements about plaintiff to the Lucas County Sheriff's office were made in good faith, with an interest to be upheld, the statements were limited in their scope to those purposes, and they were made upon proper occasions and published in proper manners to proper parties only. Regarding Cintron's statement in the Conduct Report, in *Watley v. Ohio Dept. of Rehab. & Corr.*, 2008-Ohio-3691, ¶ 30 (10th Dist.), the Tenth District Court of Appeals held that a corrections officer's statement in a conduct report was made in connection with defendant's "interest and duty in ensuring the safety and security of the institution, its prisoners, and its employees", and in this case Cintron avers that he prepared the Conduct Report in question for similar reasons. Regarding Wine's communications with the Lucas County Sheriff's office, his communications came at the request of the Lucas County Sheriff's office for the purpose of an employment background check, and generally when one publishes allegedly defamatory words to another at their request or solicitation, the relationship between those parties justifies the communication. *Hahn*, 43 Ohio St.2d at 246. Furthermore, "[a] qualified privilege has been found to exist in the context of employment references." *Tresner v. Pepsi-Cola Bottling Co.*, 1992 Ohio App. LEXIS 4575, *9 (10th Dist. Aug. 27, 1992).

{¶19} In her response, plaintiff does not dispute that defendant's Civ.R. 56 evidence demonstrates that the statements by Cintron and Wine were subject to a qualified privilege. Rather, plaintiff argues that actual malice on the part of defendant can be shown to defeat the qualified privilege. According to plaintiff, "viewing the record in a light most favorable to Plaintiff, results in the finding that Defendant's agents could have operated with actual malice when spreading falsehoods about Plaintiff." (Response, p. 7.) Stated differently, plaintiff argues that a factfinder "could determine that the actions of Defendant in spreading injurious falsehoods about Plaintiff were the result of malicious intent." (*Id.* at p. 7.)

{¶20} As authority, plaintiff points to *Hill v. Ohio Dept. of Rehab. & Corr.*, 2021-Ohio-561 (10th Dist.), where an inmate brought a claim for defamation after being accused of prison rule infractions in a Conduct Report authored by an employee of defendant. The Tenth District Court of Appeals held that, at the summary judgment stage, there was an "absence of any evidentiary support" for the employee's statement, and, accordingly, there was "a disputed issue of fact whether [the employee] published the

conduct report with actual malice." *Hill* at ¶ 26, 34. Specifically, the employee in *Hill* had written in the Conduct Report that the accusations of wrongdoing were based upon "video evidence and confidential sources", but from the record before the court at the summary judgment stage, it was "permissible to infer that [the employee] did not have any video evidence or any information from confidential sources to support the statements in the conduct report accusing [the inmate] of complicity in the drug ring." *Id.* at ¶ 22, 26.

{¶21} Here, defendant submitted affidavits from the employees who made the allegedly defamatory statements, together with copies of the evidentiary materials they relied upon when making the statements. Thus, unlike *Hill*, this case does not involve an "absence of any evidentiary support" for the allegedly defamatory statements.

{¶22} Plaintiff, citing her own affidavit that she submitted in response to the motion for summary judgment, also argues that "she was never involved with extortion, three-way calling, illegal transfer of funds, or threats." (Response, p. 7.) Plaintiff does not dispute the authenticity of the evidentiary materials involving her that Cintron and Wine relied upon, however. Nor does plaintiff explain how she believes their interpretation of those materials was false, and even if plaintiff were able to show that they falsely interpreted the materials this would not demonstrate actual malice because "[i]t is not sufficient for a libel plaintiff to show that an interpretation of facts is false; rather, he must prove with convincing clarity that defendant was aware of the high probability of falsity.'" *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 13 (1995), quoting *Jacobs,* 60 Ohio St.3d at 118-119, quoting *Duper v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 122-123 (1980). Plaintiff does not explain how, let alone point to evidence demonstrating, that Cintron or Wine were aware of a high probability of falsity when making the statements at issue.

{¶23} In sum, defendant met its burden of coming forward with evidence to affirmatively show that the statements in question were subject to qualified privilege. Though plaintiff argued in response that the statements were made with actual malice sufficient to overcome the qualified privileged defense, plaintiff failed to identify evidence demonstrating a genuine issue of material fact on that issue. Plaintiff thus did not meet her reciprocal burden of showing that a genuine issue exists for trial. *See Meredith v. ARC Indus.*, 2024-Ohio-4466, ¶ 22 (10th Dist.), quoting *Heimberger v. Zeal Hotel Group*

*Ltd.*, 2015-Ohio-3845, ¶ 14 (10th Dist.), quoting *Dresher,* 75 Ohio St.3d at 293 ("If the moving party has satisfied its initial burden under Civ.R. 56(C), then the non-moving party "'has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party."'"). Defendant is therefore entitled to summary judgment on plaintiff's defamation claim.

### B. Negligence

{¶24} Plaintiff claims that, "[a]s a direct result of Defendants' negligence in its investigation and publication of the allegations against Plaintiff, Plaintiff suffered harm, including, emotional distress, being unable to visit her husband, terminated by her employer, and public shame and embarrassment by her employer following her termination." (Complaint, ¶ 40.)

{¶25} "[T]o establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285 (1981).

{¶26} Initially, to the extent that plaintiff claims defendant was negligent in the "publication of the allegations" about her, the predominant subject matter of this claim is damage to plaintiff's reputation caused by the publication of allegedly false information. Therefore, the claim is properly characterized as one for defamation, and as previously explained, reasonable minds can only conclude that Plaintiff cannot prove a claim of defamation. *See Akarah v. Ohio Dept. of Rehab. & Corr.*, 2024-Ohio-4499, ¶ 20 (10th Dist.) (negligence claim characterized as one for defamation where the predominant subject matter "was damage resulting from ODRC's publication of false and defamatory information").

{¶27} In regard to the claim that defendant was negligent in the investigation conducted at TCI, defendant argues that the duty owed in that investigation was a 'public duty' for which it is immune from liability.

{¶28} "The State of Ohio is not liable in a civil action for negligence based on the performance or non-performance of a 'public duty.'" *Rudd v. Ohio State Hwy. Patrol*, 2016-Ohio-8263, ¶ 13 (10th Dist.), citing R.C. 2743.02(A)(3)(a). For purposes of

R.C. Chapter 2743, "'[p]ublic duty' includes, but is not limited to, any statutory, regulatory, or assumed duty concerning any action or omission of the state involving any of the following: (a) Permitting, certifying, licensing, inspecting, *investigating*, supervising, regulating, auditing, monitoring, law enforcement, emergency response activity, or compromising claims[.]"  (Emphasis added.)  "However, the public duty exception to the state's waiver of immunity does not apply where there is a 'special relationship' between the state and plaintiff."  *Croce v. Ohio State Univ. Bd. of Trustees*, 2024-Ohio-2138, ¶ 28 (10th Dist.), citing R.C. 2743.02(A)(3)(b) and R.C. 2743.01(E)(2).  "A special relationship to satisfy R.C. 2743.02(A)(3)(b) is demonstrated if all of the following elements exist:

> (i) An assumption by the state, by means of promises or actions, of an affirmative duty to act on behalf of the party who was allegedly injured;
>
> (ii) Knowledge on the part of the state's agents that inaction of the state could lead to harm;
>
> (iii) Some form of direct contact between the state's agents and the injured party;
>
> (iv) The injured party's justifiable reliance on the state's affirmative undertaking.

*Id.* at ¶ 28, quoting R.C. 2743.02(A)(3)(b).

{¶29} Plaintiff, in response, asserts the following: "In response to the public duty and lack of duty immunity arguments, Plaintiff asserts that summary judgment is inappropriate here because there remains a dispute of fact as to whether Defendant, through agents, acted with malicious purpose, in bad faith, or in a wanton or reckless manner when spreading failing to thoroughly investigate Plaintiff before spreading injurious falsehoods and misinformed allegations against her."  (Response, p. 8.)  Thus, according to plaintiff, there is an issue of fact as to whether defendant's employees are subject to personal liability under R.C. 9.86 and 2743.02(F), for having acted with malicious purpose, in bad faith, or in a wanton or reckless manner.  (*Id.* at pp. 8-9.)

{¶30} Plaintiff, however, fails to identify evidence showing that an employee of defendant acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Conversely, in their affidavits, Wine and Cintron describe acting in a good faith manner. While plaintiff points to her affidavit where she denies being involved in any wrongdoing,

neither this nor any other evidence submitted in conjunction with the motion for summary judgment demonstrates that Wine or Cintron acted with malicious purpose, in bad faith, or in a wanton or reckless, nor that they acted outside the scope of their employment. Accordingly, reasonable minds can only conclude that plaintiff cannot establish any act or omission on the part of defendant's employees that would subject them to personal liability under R.C. 9.86 and 2743.02(F).

{¶31} Plaintiff does not otherwise challenge the assertion that the investigation by defendant's employees was carried out pursuant to a public duty. Further, plaintiff does not assert, nor does the evidence submitted in connection with the motion for summary judgment demonstrate that there was a 'special relationship' that would serve as an exception to the state's immunity for the performance or non-performance of a public duty. Accordingly, reasonable minds can only conclude that defendant is immune from liability on plaintiff's claim of negligence pursuant to R.C. 2743.02(A)(3)(a).

{¶32} Additionally, regardless of defendant's immunity under the public duty rule, plaintiff fails to identify evidence demonstrating that defendant breached any duty that it owed to her. Rather, as defendant notes, plaintiff acknowledged in her deposition that defendant has the discretion under its policies to deny someone from visiting a state correctional institution. (Plaintiff's Deposition, p. 29.) *See also State ex rel. Manson v. Morris*, 66 Ohio St.3d 440 (1993) (visitor could be excluded from entering state correctional institution under department regulations).

{¶33} Accordingly, defendant is entitled to summary judgment on plaintiff's claim of negligence.

**Conclusion**

{¶34} Based on the foregoing, the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment shall be granted and judgment shall be rendered in favor of defendant.

LISA L. SADLER
Judge

| DEANNA SUTTON | Case No. 2024-00832JD |
|---|---|
| Plaintiff | Judge Lisa L. Sadler |
| | Magistrate Robert Van Schoyck |
| v. | |
| | <u>JUDGMENT ENTRY</u> |
| OHIO DEPARTMENT OF | |
| REHABILITATION AND CORRECTION | |
| | |
| Defendant | |

## IN THE COURT OF CLAIMS OF OHIO

{¶35} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. As a result, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. All previously scheduled events are VACATED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

LISA L. SADLER
Judge

**Filed March 25, 2026**
**Sent to S.C. Reporter 4/1/26**