[Cite as *Fischer v. Kent State Univ.*, 2015-Ohio-3569.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Norman Fischer, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 14AP-789 |
| v. | : | (Ct. of Cl. No. 2011-07729) |
| Kent State University, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on September 1, 2015

*Norman Fischer,* pro se.

*Michael DeWine,* Attorney General, and *Randall W. Knutti,* for appellee.

APPEAL from the Court of Claims of Ohio

HORTON, J.

{¶ 1} Plaintiff-appellant, Norman Fischer ("Fischer"), pro se, appeals from a judgment of the Court of Claims of Ohio granting defendant-appellee, Kent State University's ("Kent State") motion for summary judgment. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Fischer was a professor in the department of philosophy at Kent State from 1974 until his retirement in 2010. Fischer was a member of a labor union, Kent State's chapter of the American Association of University Professors ("AAUP-KSU"), and was subject to the terms and conditions of the Collective Bargaining Agreement ("CBA") between Kent State and the AAUP-KSU. (R. 49, 54.) Over the years, Fischer was involved in numerous disputes with Kent State, which led in one instance to a settlement

agreement between Kent State, the AAUP-KSU, and Fischer on October 17, 1996. (R. 54.) From 2007 onward, Kent State sanctioned Fischer several times and engaged in progressive discipline for his unsatisfactory work performance. (R. 41, 49, 54.)

{¶ 3} Fischer responded by filing multiple unsuccessful lawsuits against Kent State and its employees in the Portage County Common Pleas Court, the Court of Claims of Ohio, and the United States District Court. (R. 49.) Fischer also filed an unsuccessful claim with the U.S. Equal Employment Opportunity Commission ("EEOC"). (R. 16, 49, 58.)

{¶ 4} On April 30, 2010, a meeting of Kent State's Department of Philosophy Faculty Advisory Committee ("FAC") discussed alleged deficiencies in Fischer's performance of his instructional duties as a professor. Fischer attended the meeting and had the opportunity to speak on his own behalf. The President of AAUP-KSU also attended at the request of Fischer. At the meeting, three different motions overwhelmingly passed recommending that Provost Robert Frank consider sanctions against Fischer. (R. 49, 54.)

{¶ 5} On July 19, 2010, Provost Frank sent Fischer a letter stating that:

> Pursuant to the *Collective Bargaining Agreement* between Kent State University and the tenure-track faculty unit of the Kent State Chapter of the American Association of University Professors (AAUP-KSU), Article VIII, Sanctions for Cause, I write to inform you that the University, through my office as Provost and Senior Vice President for Academic Affairs, intends to proceed with sanctions for cause against you.
>
> * * *
>
> A full and complete review of this matter will be undertaken in accord [with] the procedures outlined in the *Collective Bargaining Agreement.*

(Emphasis sic.) (R. 41, 54.) Fischer provided his notice of retirement to Kent State on August 5, 2010.

{¶ 6} On May 20, 2011, Fischer filed a second complaint in the Court of Claims and, on January 23, 2012, an amended complaint, asserting claims of defamation, breach of contract, intentional infliction of emotional distress, retaliation, and violations of his

First Amendment rights, R.C. 149 and 1347.10. (R. 1, 17.)  The Court of Claims of Ohio accurately summarized Fischer's claims:

> [C]ertain employees of defendant knowingly made false and malicious statements and allegations about him with regard to his conduct as a professor. Plaintiff asserts that the correspondence dated May 4, 2010, from the Chair of the Faculty Advisory Committee (FAC) of the Department of Philosophy, David Odell-Scott, to Provost Robert Frank, which refers to the April 30, 2010 FAC meeting, and a letter dated July 19, 2010 to plaintiff from the Provost, were defamatory and retaliatory in nature, adversely affected his employment, and caused him emotional distress. * * * . Plaintiff also alleges that defendant intentionally maintained false or inaccurate personal information about him, in violation of R.C. 1347.10, and that defendant failed to comply with R.C. 149 when it did not furnish him with public records about his employment. Plaintiff also asserts that defendant violated a settlement agreement dated October 17, 1996, and that several of defendant's employees violated his First Amendment rights. Finally, plaintiff asserts that the May 4 and July 19, 2010 letters constitute retaliation.

(Decision, 2.)

{¶ 7}  On September 5, 2014, the court granted Kent State's motion for summary judgment, found that there are no genuine issues of material fact, and held that:

> [D]efendant is entitled to judgment as a matter of law on plaintiff's claims of defamation and violations of R.C. 1347.10. The court further finds that it lacks jurisdiction over plaintiff's claims of breach of contract, intentional infliction of emotional distress, retaliation, constitutional claims, and violations of R.C. 149, and those claims are therefore DISMISSED. Accordingly, defendant's motion for summary judgment shall be granted.

(Decision, 10.)

## II.  ASSIGNMENTS OF ERROR

{¶ 8}  Fischer appeals, assigning the following as error:

> [I.] On September 5, 2014 Count III, Violation of State law 1347, of my Court of Claims law suit no 2011-07729. Norman Fischer v Kent State University, amended January 23, 2012. [sic] was summarily dismissed by Judge McGrath.

[II.] On the same day Judge McGrath also dismissed Count V Breach of Contract.

[III.] On the same day Judge McGrath also dismissed Count I Intentional Infliction of Emotion [sic] Distress.

[IV.] On the same day Judge McGrath also dismissed Count VII Retaliation.

[V.] On the same day Judge McGrath also dismissed Counts [sic] II Defamation.

[VI.] On the same day Judge McGrath also dismissed Counts [sic] VI Violation of the First Amendment and Article I of the Ohio Constitution.

[VII.] On the same day Judge McGrath also dismissed Count IV Violation of State law 149.

## III. STANDARD OF REVIEW

{¶ 9} Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162 (4th Dist.1997). "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Bank Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997).

{¶ 10} Pursuant to Civ.R. 16(A)(3), an appellant's brief must contain "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." Assignments of error must designate specific rulings that the appellant wishes to challenge on appeal. *Dailey v. R & J Commercial Contracting, Inc.*, 10th Dist. No. 01AP-1464, 2002-Ohio-4724,¶ 17. Here, Fischer's assignments of error are merely a list of Fischer's dismissed claims, with no specificity as to any alleged error.

{¶ 11} Appellate courts have discretion to dismiss appeals for failure to follow the Rules of Appellate Procedure. App.R. 3(A); *CitiMortgage, Inc. v. Asamoah*, 10th Dist. No. 12AP-212, 2012-Ohio-4422. This court notes that Fischer's brief is at times rambling and hard to follow. However, in the interest of justice, we will review Fischer's arguments.

## IV. FIRST ASSIGNMENT OF ERROR – NO VIOLATION OF R.C 1347

{¶ 12} In Fischer's first assignment of error, he alleges that the trial court erred by granting summary judgment on his claim that Kent State violated R.C. 1347.10. R.C. 1347.10 establishes a civil action for the wrongful disclosure of stored personal information. Specifically, Fischer claims that Kent State's attorneys wrongfully disclosed false information from his employment records during EEOC proceedings. (R. 54.)

{¶ 13} R.C. 1347.04(B) states, in relevant part: "The provisions of this chapter shall not be construed to prohibit the release of public records, or the disclosure of personal information in public records, as defined in R.C. 149.43 of the Revised Code, * * *. The disclosure to members of the general public of personal information contained in a public record, as defined in section 149.43 of the Revised Code, is not an improper use of personal information under this chapter."

{¶ 14} EEOC filings and proceedings are public records of which a court may take judicial notice. *See Bland v. Fairfax Cty., Va.*, E.D. Virginia No. 1:10CV1030 (June 29, 2011), citing *Pearson v. PeopleScout, Inc.*, N.D. Illinois No. 10c5542 (Apr. 26, 2011), fn. 1; *Robinson v. Heritage Elementary School*, D. Arizona No. CV-09-0541 (Apr. 15, 2011); and *Gallo v. Bd. of Regents of Univ. of Cal.*, 916 F.Supp. 1005, 1007 (S.D.Cal.1995).

{¶ 15} We agree with the trial court that Kent State's EEOC brief is a public record pursuant to R.C. 149.43. Fischer brought forth no evidence to the contrary to show that the legal brief written by Kent State's attorneys in response to his EEOC complaint is exempt, pursuant to R.C. 149.43, from disclosure. Therefore, we agree with the trial court in granting Kent State summary judgment on Fischer's R.C. 1347.10 claim. Accordingly, Fischer's first assignment of error is overruled.

## V. SECOND, THIRD, AND FOURTH ASSIGNMENTS OF ERROR – STATUTORILY PREEMPTED

{¶ 16} We will discuss Fischer's second, third, and fourth assignments of error together, as they are related. Fischer contends that the trial court erred when it found that, per R.C. 4117, the CBA between Kent State and Fischer, through the AAUP-KSU, preempted his claims of breach of contract, intentional infliction of emotional distress, and retaliation.

{¶ 17} Fischer alleges that Kent State breached the settlement agreement of October 17, 1996 by including "numerous documents of my work file preceding October 17, 1996" in EEOC filings, and by Chair Odell-Scott assigning him "punitive" course schedules. (R. 49.) Further, Fischer asserts that the letters sent by Chair Odell-Scott and Provost Frank, in the normal course of handing down sanctions pursuant to the CBA, were sent as a means of retaliation and with the intention to cause Fischer emotional distress. (R. 49.)

{¶ 18} R.C. Chapter 4117 establishes a framework for resolving public sector labor disputes by creating procedures and remedies to enforce those rights. R.C. 4117.10(A) provides that a collective bargaining agreement between a public employer and the bargaining unit "controls all matters related to the terms and conditions of employment and, further, when the collective bargaining agreement provides for binding arbitration, R.C. 4117.10(A) recognizes that arbitration provides the exclusive remedy for violations of an employee's employment rights." *Gudin v. Western Reserve Psychiatric Hosp.*, 10th Dist. No. 00AP-912 (June 14, 2001).

{¶ 19} We agree with the trial court that Fischer's breach of contract claims are based upon the terms of his employment and are preempted by the CBA. In order for us to determine whether Chair Odell-Scott and Provost Frank acted in a manner that could possibly be retaliatory, or intended to cause emotional distress, we would need to examine the CBA policy on sanctions. As such, these claims are also preempted.

{¶ 20} Additionally, pursuant to R.C. 4117.09(B)(1), jurisdiction over suits alleging violations of collective bargaining agreements lie with the courts of common pleas alone. *Moore v. Youngstown State Univ.*, 63 Ohio App.3d 238, 242 (10th Dist.1989). Even if Fischer's claims were somehow independent of R.C. 4117, his complaint would still only be proper in common pleas court. *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capitol City Lodge No. 9,* 59 Ohio St.3d (1991), paragraph two of the syllabus.

{¶ 21} Construing the evidence most strongly in favor of Fischer, his claims are predicated on allegedly wrongful conduct that is directly related to the terms and conditions of his employment, and such claims are dependent on an analysis or interpretation of the CBA. Accordingly, those claims are preempted by the CBA, and the

trial court was without jurisdiction. Even if Fischer had asserted rights that were independent of R.C. 4117, jurisdiction would not be proper in the Court of Claims. Fischer's second, third, and fourth assignments of error are overruled.

## VI. FIFTH ASSIGNMENT OF ERROR – DEFAMATION CLAIMS BARRED

{¶ 22} In his fifth assignment of error, Fischer alleges that the trial court erred in dismissing his claim of defamation against Kent State. A claim for defamation "shall be commenced within one year after the cause of action accrued." R.C. 2305.11(A).

{¶ 23} Fischer asserts in his amended complaint that his cause of action arose on May 20, 2009. Fischer filed his complaint on May 20, 2011. Accordingly, pursuant to R.C. 2305.11(A), any claims of defamation are limited to statements made on or after May 20, 2010. As such, many of Fischer's claims of defamation, which go back as far as 2006, are barred by the statute of limitations, including the April 30, 2010 FAC meeting minutes (R. 49, 54), and Chair Odell-Scott's May 4, 2010 letter to Provost Frank (R. 41, 54.)

{¶ 24} Fischer next claims that statements made by Provost Frank in his July 19, 2010, letter to Fischer (R. 41, 54), notifying him that Kent State intended "to proceed with sanctions for cause against you" were defamatory. (R. 49.) While this claim is not barred by the statute of limitations, the statements in question are protected by a qualified privilege.

{¶ 25} This court in *Mallory v. Ohio Univ.*, 10th Dist. No. 01AP-278 (Dec. 20, 2001), has discussed the purpose of a qualified privilege as follows:

> "The purpose of a qualified privilege is to protect speakers in circumstances where there is a need for full and unrestricted communication concerning a matter in which the parties have an interest or duty. *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 246 * * *. A qualified privilege exists when a statement is: made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. * * * "
>
> Further, "[t]he essential elements of a communication protected by qualified privilege are: '[1] good faith, [2] an interest to be upheld, [3] a statement limited in its scope to

> this purpose, [4] a proper occasion, and [5] publication made in a proper manner and to proper parties only." " *Austin*, quoting *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 114. Finally, "[i]f a defendant establishes all five elements for the application of a qualified privilege, a plaintiff can defeat its application only by showing by clear and convincing evidence that the defendant acted with actual malice." *Austin, supra.*

*Id.* at 8.

{¶ 26} The letter of July 19, 2010, was sent by Provost Frank to Fischer pursuant to the CBA, and was part of Provost Frank's duties for Kent State. Fischer has not provided any evidence, other than his own assertions, that Provost Frank, or anyone else involved in this case, acted with actual malice. We find that the trial court was correct in finding that a qualified privilege exists as to Provost Frank's letter of July 19, 2010.

{¶ 27} Fischer's remaining allegations of defamation are with regard to statements made by both attorneys and witnesses during the proceedings of his EEOC claim, and affidavits and depositions taken in this matter. (R. 49.) Attorneys and witnesses are extended an absolute immunity from claims of defamation for matters relevant to judicial proceedings. *Willitzer v. McCloud*, 6 Ohio St.3d 447, 448-449 (1983). The affidavits and depositions taken in either the EEOC matter, or in this matter, are absolutely immune.

{¶ 28} In summary, whether barred by the statute of limitations, a qualified privilege, or immunity, none of Fisher's defamation claims have merit. Fischer's fifth assignment of error is overruled.

## VII. SIXTH AND SEVENTH ASSIGNMENTS OF ERROR – COURT OF CLAIMS LACKS JURISDICTION

{¶ 29} In his sixth assignment of error, Fischer maintains that the trial court erred when it held that it lacked jurisdiction to hear claims that Kent State violated his rights under the First Amendment of the United States Constitution, and Article I of the Ohio Constitution. Fischer's seventh assignment of error challenges the trial court finding that it lacked jurisdiction to hear his claim alleging a violation of R.C. 149, Ohio's Public Records Act.

{¶ 30} Any claim of a constitutional rights violation must be brought pursuant to 42 U.S.C. 1983. *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701 (1989). The State is not a person for purposes of 42 U.S.C. 1983. As such, claims against the State for violations of

constitutional rights cannot be brought in the Court of Claims. *Burkey v. S. Ohio Corr. Facility*, 38 Ohio App.3d 170 (10th Dist.1988).  Fischer's sixth assignment of error is overruled.

{¶ 31} Fischer alleges that Kent State failed to comply with some of his discovery requests, and violated Ohio's Public Records Act. Even if Kent State violated R.C. 149, the remedy for this wrong is not in the Court of Claims.  R.C. 149.43(C)(1) allows the allegedly aggrieved party to commence a mandamus action in the court of common pleas, the court of appeals , or in the supreme court. Fischer's seventh assignment of error is overruled.

## VIII. DISPOSITION

{¶ 32} Having overruled Fischer's seven assignments of error, the judgment of the Court of Claims of Ohio is affirmed.

*Judgment affirmed.*

DORRIAN and BRUNNER, JJ., concur.

_____