[Cite as *Akarah v. Ohio Dept. of Rehab. & Corr.*, 2024-Ohio-4499.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Amos Akarah, | : | |
| Plaintiff-Appellant, | : | No. 23AP-743 |
| | | (Ct. of Cl. No. 2021-00054JD) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Rehabilitation and Correction, | : | |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

———————

D E C I S I O N

Rendered on September 12, 2024

———————

**On brief**: *Amos Akarah*, pro se. **Argued**: *Amos Akarah*.

**On brief**: *Dave Yost*, Attorney General, *Peter E. Demarco*, and *Heather M. Lammardo*. **Argued**: *Peter E. Demarco*.

———————

APPEAL from the Court of Claims of Ohio

EDELSTEIN, J.

{¶ 1} Plaintiff-appellant, Amos Akarah, appeals from a judgment of the Court of Claims of Ohio granting the motion for summary judgment filed by defendant-appellee, the Ohio Department of Rehabilitation and Corrections ("ODRC"). For the reasons that follow, we affirm.

## I. Facts & Procedural History

{¶ 2} In 2018, Mr. Akarah, a licensed practical nurse, worked at ODRC's Franklin Medical Center ("FMC") through a staffing agency known as Around-The-Clock staffing. On October 24, 2018, FMC nursing supervisor Tammy Blackmon received an email stating that Mr. Akarah was a no call no show "for 2nd shift" and that he "[c]alled stating he [would] be 20 minutes late for 3rd" shift. (Blackmon Aff., Ex. A-3.) On November 6, 2018, an ODRC

employee filed an incident report stating that Mr. Akarah did not complete a patient's wound dressing change during his shift as required.

{¶ 3} Following the November 6, 2018 incident report, Ms. Blackmon reviewed Mr. Akarah's "recent charting" and discovered that Mr. Akarah "failed to complete patient dressing changes on October 30 and November 1, 2, and 4, 2018, and had failed to document meal consumption for multiple patients on multiple dates." (Blackmon Aff. at ¶ 9.) On November 8, 2018, Ms. Blackmon created an incident report addressing Mr. Akarah's documentation and performance issues. Ms. Blackmon also sent an email to Jesse Templeton, the ODRC employee responsible for scheduling agency nurses, stating that ODRC "may need to evaluate [Mr. Akarah's] continued employment" due to his recent incident reports. (Blackmon Aff., Ex. A-6.)

{¶ 4} On November 8, 2018, Mr. Akarah received a text message stating he would be removed from his assignment at FMC due to "absenteeism, arriving late to his scheduled shifts, and for refusing to provide treatment to a patient." (Compl. at ¶ 6.) Mr. Akarah stated that Around-The-Clock staffing attempted to place him at other ODRC facilities following his removal from FMC, but could not, because ODRC had placed his name "on a 'Do Not Employ' list." (Compl. at ¶ 9.) Mr. Akarah alleged that Around-The-Clock staffing was "forced * * * to drop [him] from the agency altogether." (Compl. at ¶ 10.)

{¶ 5} In late 2019, Mr. Akarah applied for available nursing positions at ODRC's FMC and Pickaway Correctional Institution ("PCI"). Mr. Akarah also submitted an application to InGenesis staffing agency, another agency that supplied nursing staff to ODRC. On January 27, 2020, InGenesis informed Mr. Akarah that ODRC had selected him to work at FMC. However, on January 31, 2020, InGenesis informed Mr. Akarah that FMC had "drop[ped] him from employment." (Compl. at ¶ 17.)

{¶ 6} Mr. Akarah filed a charge of age discrimination against ODRC with the Equal Employment Opportunity Commission ("EEOC") on April 24, 2020. ODRC filed its position statement with the EEOC in June 2020 opposing the charge of discrimination. ODRC explained that it terminated Mr. Akarah's employment in November 2018 due "to issues of attendance, performance, and documentation." (Compl., Ex. 2.) ODRC also stated that its medical operations director had discovered Mr. Akarah "was involved in the case of an inmate at PCI who had died." (Compl., Ex. 2.) ODRC submitted a May 18, 2020

statement from Nicole Erdos, a program administrator for ODRC's operation support center, with its EEOC position statement. Ms. Erdos' statement explained that, on January 31, 2020, she discovered an ODRC employee had created a work order for Mr. Akarah. Ms. Erdos informed the ODRC employee that Mr. Akarah "had previously been terminated from FMC for 'issues with attendance, performance, and documentation' " and that "in April 2019, it was discovered [Mr. Akarah] had been involved in the care of an inmate at PCI who had died." (Compl., Ex. 1.)

{¶ 7} On February 2, 2021, Mr. Akarah, through counsel, filed a complaint against ODRC in the Court of Claims alleging claims for defamation, tortious interference with contract, and negligence. Mr. Akarah's defamation claim alleged that ODRC's statement to the EEOC, indicating he was involved in the death of an inmate at PCI, was "demonstrably false." (Compl. at ¶ 29.) Mr. Akarah's claim for tortious interference alleged that ODRC interfered with his contractual relationships with Around-The-Clock and InGenesis staffing agencies by conveying "false, inaccurate, and defamatory statements" to the agencies. (Compl. at ¶ 37.) Mr. Akarah's negligence claim alleged that ODRC had a duty to refrain from reporting inaccurate information to third parties, and that ODRC breached its duty when it reported "false and defamatory statements to both staffing agencies referenced above." (Compl. at ¶ 43.)

{¶ 8} The Court of Claims appointed Robert Van Schoyck to serve as the magistrate in the case. The parties filed a joint request for mediation, and, on January 4, 2023, the court's mediator issued an order stating the parties had reached a settlement agreement. On January 30, 2023, Mr. Akarah sent a pro se letter to the court stating he did not agree with the proposed settlement and he wanted "the case to go for trial." (Jan. 24, 2023 Letter at 6.) Shortly thereafter, the trial court granted Mr. Akarah's attorney's motion to withdraw as counsel. On April 14, 2023, the magistrate issued an order stating that any proceeding to enforce the parties' settlement agreement would be held in abeyance pending resolution of dispositive motions.

{¶ 9} On May 31, 2023, ODRC filed a Civ.R. 56 motion for summary judgment. ODRC asserted that an absolute privilege protected the statements alleged in Mr. Akarah's defamation claim as they came in the form of a filing with the EEOC in response to Mr. Akarah's charge of discrimination. ODRC further asserted that Mr. Akarah's claims for

tortious interference and negligence were substantively defamation claims that were both time-barred and subject to a qualified privilege. ODRC supported its motion for summary judgment with affidavits from Ms. Blackmon and Ms. Erdos, and with the documents ODRC submitted to the EEOC in response to Mr. Akarah's charge of discrimination. In her affidavit, Ms. Erdos explained that ODRC worked with InGenesis to procure nursing staff for ODRC's facilities, and that InGenesis worked with other staffing agencies, such as Around-The-Clock, "who contract with workers to be placed in assignments such as with [O]DRC." (Erdos Aff. at ¶ 2.) Ms. Erdos further explained that on April 24, 2019, she received an email from Kevin Runyon, ODRC's interim Medical Operations Director, stating that Mr. Akarah was "part of an investigation performed by [ODRC's] inspector's office" and needed to be removed "from the eligible list of employment." (Erdos Aff. at ¶ 4.) Ms. Erdos stated that she "subsequently learned" the investigation referenced in Mr. Runyon's email concerned the death of an inmate that occurred at FMC, not PCI. (Erdos Aff. at ¶ 7.)

{¶ 10} On June 28, 2023, Mr. Akarah filed a response in opposition to ODRC's motion for summary judgment. Mr. Akarah asserted that an inmate had a right to refuse treatment, that ODRC's statements regarding his "Attendance, Absenteeism, tardiness, no call, no show" were false, and that he did not administer "treatment of any kind to the deceased inmate." (Response in Opp. at 8-11.) Mr. Akarah supported his response in opposition to summary judgment with the following documents: statements confirming his interviews at FMC and PCI in December 2019; the January 27, 2020 email from InGenesis stating that FMC would move forward with his work assignment; the January 31, 2020 email from InGenesis stating that "due to attendance and other issues," ODRC would not move forward with his work assignment; his EEOC charge of discrimination; his notice of right to sue letter from the EEOC; ODRC's EEOC position statement; and pages of various websites. (Pl.'s Response in Opp. to Def.'s Mot., Exs. 1-9, Extracts 1-03.) On July 5, 2023, ODRC filed a reply brief in support of its motion for summary judgment.

{¶ 11} On November 14, 2023, the Court of Claims issued a decision and entry granting ODRC's motion for summary judgment. The court concluded that Mr. Akarah's claim for defamation asserted in Count 1 of his complaint was subject to an absolute privilege. The court found Mr. Akarah's claims for tortious interference and negligence

asserted in Counts 2 and 3 of his complaint were defamation claims that were both untimely and subject to a qualified privilege.

## II. Assignments of Error

{¶ 12} Mr. Akarah appeals, assigning the following five errors for our review:

(A) The trial court failed to hold oral hearing on this case since Feb.2021-Nov.2023 to find out the truth about this case. The trial court relied only on the information provided by the defendant (because it is a government establishment like them), but relegated my information presented by my former Attorneys to the background.

(B) The trial court erred by totally omitted the main reason that I was removed by FMC on Nov.2018 (Failure to complete wound dressing change), considering that two nurses at FMC failed to complete this same wound dressing change in 2019, and were terminated. The two nurses took ODRC to court and were settled two hundred and fifty thousand ($250,000.00) dollars each and reinstated to work at FMC.

(C) The trial court erred by failing to ask the defendant to produce incident report about the death of the inmate.

(D) The trial court erred by stating that the case is time bar when the information about the death inmate was made known to me by EEOC on Aug.2020 and I filed the case at Ohio Southern District court in Nov.2020 (as a Pro se), and my Attorneys filed at Ohio court of claims on Feb.2021.

(E) The trial court erred and abused its discretional power by stating that there are no genuine issues of material fact and that the defendant is entitled to summary judgement as a matter of law. The court had awarded five thousand dollars ($5,000.00) to the plaintiff on Dec.30, 2022, but I refused it because my Attorneys were entitled to 33% of the amount. Moreover, the false publication by ODRC made me to be unemployed for 18 months (no good credit and no job to borrow from bank), I was living at the mercy of friends and garbage bins. Magistrates Scott Sheets (Mediator on Dec.30,2022) and Robert Van Schoyck (Feb.22,2022) used their discretional power to brag that Ohio state is a Conservative state and so are the courts in Ohio State, the Court of claims DOES NOT USE JURY, it is only the Judges and Magistrates rulings that are final, and no other courts can change their verdicts. Magistrate Robert van Schoyck VEHMENTLY VOWED that he would make sure that I lose it

all. These are government employees meant to administer justice to the public with un-biased mind.

(Sic passim.)

### III. Assignment of Error E – Summary Judgment

{¶ 13} For ease of analysis, we address Mr. Akarah's assignment of error E first. In his assignment of error E, Mr. Akarah asserts the Court of Claims erred by granting ODRC's motion for summary judgment.

{¶ 14} An appellate court reviews a grant of summary judgment under a de novo standard. *Capella III, LLC v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001). "[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal quotations and citations omitted.) *Holt v. State*, 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997). In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the non-moving party. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6, citing *Pilz v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-240, 2004-Ohio-4040, ¶ 8.

{¶ 15} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment. *Id.* If the moving party satisfies its initial burden, summary judgment is appropriate unless the non-moving party responds, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist.

No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

## A. Mr. Akarah's defamation claim

{¶ 16} The trial court found Mr. Akarah's defamation claim was subject to an absolute privilege. "Defamation is defined as 'a false publication that injures a person's reputation.' " *Jahahn v. Wolf*, 10th Dist. No. 12AP-624, 2013-Ohio-2660, ¶ 13, quoting *Gosden v. Louis*, 116 Ohio App.3d 195, 206 (9th Dist.1996). To establish defamation, the plaintiff must show: (1) a false statement of fact was made; (2) the statement was defamatory; (3) the statement was published; (4) the plaintiff suffered injury as a proximate result of the publication; and (5) the defendant acted with the requisite degree of fault in publishing the statement. *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, ¶ 77, citing *Pollock v. Rashid*, 117 Ohio App.3d 361, 368 (1st Dist.1996). " '[I]t is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not.' " *Id*. at ¶ 78, quoting *Yeager v. Local Union 20, Teamsters, Chauffers, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369, 372 (1983).

{¶ 17} "[A] statement in a judicial or quasi-judicial proceeding is absolutely privileged and may not form the basis for a defamation action as long as the allegedly defamatory statement is reasonably related to the proceedings." *Savoy v. Univ. of Akron*, 10th Dist. No. 13AP-696, 2014-Ohio-3043, ¶ 19, citing *Ibanez v. Mosser*, 10th Dist. No. 11AP-1100, 2012-Ohio-4375, ¶ 9. *See Hecht v. Levin*, 66 Ohio St.3d 458, 462 (1993) (explaining that "the truth-seeking process in litigation demands the free and unencumbered exchange of statements"). "Under Ohio law, statements made to the Equal Employment Opportunity Commission are absolutely privileged." *Kettering v. Diamond-Triumph Auto Glass, Inc.*, 24 Fed.Appx. 352, 358 (6th Cir.2001). *See Fischer v. Kent State Univ.*, 10th Dist. No. 14AP-789, 2015-Ohio-3569, ¶ 27 (stating that "affidavits and depositions taken in * * * [an] EEOC matter * * * are absolutely immune"); *Saini v. Cleveland Pneumatic Co.*, 8th Dist. No. 51913, 1987 Ohio App. LEXIS 6872, *10 (May 14, 1987) (finding an absolute privilege applied "to communications [made] during the course of an EEOC investigation").

{¶ 18} Mr. Akarah's defamation claim alleged that ODRC's statement to the EEOC, indicating he was involved in the death of an inmate, was defamatory. The Court of Claims

found ODRC's statement regarding the death of the inmate "reasonably related to the charge of age discrimination that Plaintiff made with the EEOC," because the statement addressed ODRC's claimed non-discriminatory reason for refusing to proceed with Mr. Akarah's work assignment in January 2020. (Decision at 4.)  Indeed, ODRC's position statement to the EEOC and Ms. Erdos' statement submitted in support of ODRC's position statement both identified the fact that Mr. Akarah was involved in the death of an inmate as part of ODRC's legitimate, non-discriminatory reasons for refusing to proceed with Mr. Akarah's work assignment in 2020.  As such, the court properly determined that ODRC's statement regarding the death of the inmate was reasonably related to the EEOC proceedings and therefore subject to an absolute privilege.

{¶ 19} Mr. Akarah contends the statement indicating he was involved in the death of the inmate was false, and that "[a] statement of quasi-judicial proceeding is privileged only to the extent that the statement is true." (Appellant's Brief at 12.)  We disagree.  The " 'absolute privilege protects the publisher of a false, defamatory statement even though it is made with actual malice, in bad faith and with knowledge of its falsity.' " *Lacey v. Ohio Aud. of State*, 10th Dist. No. 19AP-110, 2019-Ohio-4266, ¶ 15, quoting *Bigelow v. Brumley*, 138 Ohio St. 574, 579 (1941).  *Accord M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 505 (1994); *Savoy*, 2014-Ohio-3043, ¶ 21, citing *Tresner v. Pepsi-Cola Bottling Co.*, 10th Dist. No. 91AP-1093, 1992 Ohio App. LEXIS 4575 (Aug. 27, 1992) (noting that "[a]ctual malice may overcome a qualified privilege, but not an absolute privilege").  Accordingly, because ODRC's statement regarding the death of the inmate was reasonably related to the EEOC proceeding, the absolute privilege protected the statement even if the statement was false.  Therefore, the court properly granted ODRC summary judgment on Mr. Akarah's claim for defamation in Count 1 of the complaint.

**B.  Mr. Akarah's tortious interference and negligence claims**

{¶ 20} The Court of Claims found that Mr. Akarah's claims for tortious interference and negligence were both substantively defamation claims.  "A trial court may characterize a claim presented by a plaintiff as one for defamation if the grounds for bringing the action support such a characterization." *Ra v. Ohio Atty. Gen. Office*, 10th Dist. No. 19AP-533, 2020-Ohio-1346, ¶ 17, citing *Singh v. ABA Publishing*, 10th Dist. No. 02AP-1125, 2003-Ohio-2314, ¶ 25-27. A court may characterize a claim as one for defamation where "the

'predominant subject matter' of [the] plaintiff's action is 'the alleged damage to the [plaintiff's] reputation caused by the circulation of allegedly false information.' " *Id.* at ¶ 18, quoting *Singh* at ¶ 25-27. *See also Breno v. Mentor*, 8th Dist. No. 81861, 2003-Ohio-4051, ¶ 12, citing *Worpenberg v. Kroger Co.*, 1st Dist. No. C-010381 (Mar. 8, 2002) (stating that "where a claim is expressly premised upon a 'communication' of false information, it is properly characterized as a 'disguised defamation' claim"). The predominant subject matter of both Mr. Akarah's tortious interference and negligence claims was damage resulting from ODRC's publication of false and defamatory information to the third-party staffing agencies. As such, the court did not err by characterizing the tortious interference and negligence claims as claims for defamation.

{¶ 21} The Court of Claims further found the defamation claims alleged in Counts 2 and 3 of the complaint were both time-barred and subject to a qualified privilege. " 'A qualified privilege is an affirmative defense to a claim of defamation.' " *Alford v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 22AP-779, 2024-Ohio-19, ¶ 21, quoting *Morrison v. Gugle*, 142 Ohio App.3d 244, 258 (10th Dist.2001). A qualified privilege "shields the defamer from liability to plaintiff where 'society's interest in compensating a person for loss of reputation is outweighed by a competing interest that demands protection.' " *Id.*, quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 8 (1995). *See Fischer*, 2015-Ohio-3569, ¶ 25, quoting *Mallory v. Ohio Univ.*, 10th Dist. No. 01AP-278 (Dec. 20, 2001) (explaining that the purpose of a qualified privilege " 'is to protect speakers in circumstances where there is a need for full and unrestricted communication concerning a matter in which the parties have an interest or duty' ").

{¶ 22} The essential elements of a qualifiedly privileged communication are: (1) good faith; (2) an interest to be upheld; (3) a statement limited in its scope to this purpose; and (4) a proper occasion and publication in a proper manner and to proper parties only. *Alford* at ¶ 21, citing *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9. The trial court concluded that ODRC had a business relationship with the third-party staffing agencies and that ODRC's communications with the staffing agencies "were made in good faith and involved subject matter of common interest between an employer and the staffing agencies with which it did business, i.e. the discharge of a former employee." (Decision at 10.) *See Jahan*, 2013-Ohio-2660, ¶ 17, quoting *Croskey v.*

*Universal Health Servs.*, 5th Dist. No. 09 CA 37, 2009-Ohio-5951, ¶ 59 (stating that "Ohio law recognizes that 'a qualified privilege exists as to communications of an employer concerning the discharge of a former employee to that employee's prospective employer' "). *See also Hatton v. Interim Health Care of Columbus, Inc.*, 10th Dist. No. 06AP-828, 2007-Ohio-1418, ¶ 14, quoting *Hanly v. Riverside Methodist Hosp.*, 78 Ohio App.3d 73, 81 (10th Dist.1991) (stating that " 'a communication made in good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee, is protected by qualified privilege' ").

{¶ 23} "Once established, a qualified privilege can be defeated by a clear and convincing showing that the communication was made with actual malice." *Hill v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 20AP-88, 2021-Ohio-561, ¶ 17, citing *A & B-Abell* at 11. In a qualified privilege case, "actual malice" is defined as " 'acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity.' " *Jackson*, 2008-Ohio-1041, ¶ 10, quoting *Jacobs v. Frank*, 60 Ohio St.3d 111 (1991), paragraph two of the syllabus. "The phrase 'reckless disregard' applies when a publisher of defamatory statements acts with a 'high degree of awareness of their probable falsity' * * * or when the publisher 'in fact entertained serious doubts as to the truth of his publication.' " *Id.*, quoting *Garrison v. La*, 379 U.S. 64, 74 (1964); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). The trial court concluded that Mr. Akarah did not identify any Civ.R. 56 evidence indicating that ODRC acted with actual malice.

{¶ 24} ODRC's summary judgment evidence demonstrated that on November 8, 2018, an InGenesis employee sent an email to both Ms. Erdos and ODRC employee Kelly Storm, asking for information regarding Mr. Akarah's termination from FMC. On November 9, 2018, Ms. Storm forwarded an email from Mr. Templeton to the InGenesis employee, stating that ODRC removed Mr. Akarah from FMC because he was a "no call no show" and because of "an incident report written in regards to him refusing to complete a wound care dressing." (Erdos Aff., at Ex. B-3.) On January 31, 2020, Tasha Fry, the ODRC employee who created the work order for Mr. Akarah, sent an email to an InGenesis employee explaining that Ms. Fry had just learned Mr. Akarah "was terminated from another institution for attendance and other issues," and that ODRC would not "hire him in light of this new information." (ODRC Mot. for Summ Jgmt., Ex. D.)

{¶ 25} The record supports the trial court's conclusion that ODRC and the staffing agencies had a common business interest in the performance of the agency employees who worked at ODRC's facilities. Accordingly, ODRC's statements made in good faith to InGenesis concerning ODRC's reasons for terminating Mr. Akarah's work assignment at FMC in 2018, and for refusing to proceed with his work assignment in 2020, were subject to a qualified privilege. *See Jurczak v. J&R Schugel Trucking Co.*, 10th Dist. No. 03AP-451, 2003-Ohio-7039, ¶ 41, citing *Buchko v. City Hosp. Assn.*, 76 F.3d 378 (6th Cir.1996) (stating that in *Buchko* the court found comments "by hospital administrator to third-party staffing company about plaintiff, who was employed by third-party staffing company, were privileged based on the common business interest between the hospital and the third-party staffing company"); *Wilson v. Am. Elec. Power*, 10th Dist. No. 91AP-996, 1992 Ohio App. LEXIS 2154 *10 (Apr. 21, 1992) (finding statements from a company representative to the company's contractor regarding the conduct of the contractor's employee at the company's job site were protected by a qualified privilege, because the statements were "made in good faith and concerned a matter in which all parties had a common interest or duty").

{¶ 26} In response to ODRC's motion for summary judgment, Mr. Akarah argued that ODRC's statements to InGenesis regarding his attendance issues were false, and that he was justified in refusing to complete the patient's wound dressing change. When assessing actual malice, "our focus is on the publisher's attitude toward the truth or falsity of the publication." *McKimm v. Ohio Elections Comm.*, 89 Ohio St.3d 139, 147 (2000), citing *Perez v. Scripps-Howard Broadcasting Co.*, 35 Ohio St.3d 215 (1988), paragraph two of the syllabus. *Accord Mills Van Lines, Inc. v. Prudential Real Estate & Relocation Servs.*, 8th Dist. No. 95582, 2011-Ohio-3833, ¶ 19, citing *Lakota Local School Dist. Bd. of Edn. v. Brickner*, 108 Ohio App.3d 637, 649 (6th Dist.1996) (stating that "[t]he subjective belief of the speaker must be considered in determining whether a statement was made with actual malice").

{¶ 27} Ms. Blackmon's affidavit, submitted in support of ODRC's motion for summary judgment, incorporated by reference an October 24, 2018 email stating that Mr. Akarah was a no call no show for 2nd shift and late for another shift, a November 6, 2018 incident report stating that Mr. Akarah failed to complete a patient's wound dressing change during his shift, and Ms. Blackmon's November 8, 2018 incident report

demonstrating that Mr. Akarah failed to complete wound dressing changes on several dates. Thus, ODRC's summary judgment evidence demonstrated the ODRC employees had grounds to believe their statements to InGenesis were true. Mr. Akarah failed to present any Civ.R. 56 evidence demonstrating the ODRC employees acted with actual malice when they made their statements to InGenesis in 2018 and 2020.

{¶ 28} Accordingly, even viewing the evidence in a light most favorable to Mr. Akarah, reasonable minds could only conclude that ODRC's statements to InGenesis were subject to a qualified privilege. As such, the court properly granted ODRC summary judgment on Mr. Akarah's defamation claims in Counts 2 and 3 of his complaint.

## C. Mr. Akarah's claim of bias in the trial court proceedings

{¶ 29} Mr. Akarah's assignment of error E also asserts the trial court's magistrate "VOWED" to make sure Mr. Akarah "los[t] it all" and that the magistrate failed to administer justice "with [an] un-biased mind." Civ.R. 53(D)(6) provides that "[d]isqualification of a magistrate for bias or other cause is within the discretion of the court and may be sought by motion filed with the court." Thus, "[t]he proper method to challenge a magistrate's impartiality is to file a motion for disqualification with the trial court." *Barton v. Barton*, 5th Dist. No. 15-CA-13, 2015-Ohio-5194, ¶ 41, citing *Lingenfelter v. Lingenfelter*, 9th Dist. No. 14AP0005, 2015-Ohio-4002, ¶ 10. *See Angus v. Angus*, 10th Dist. No. 15AP-655, 2016-Ohio-7789, ¶ 16 (noting that "motions to disqualify a magistrate are not subject to the decision and objection processes set forth in Civ.R. 53(D)(1) and (3)"); *Ashley v. Kevin O'Brien & Assoc. Co., L.P.A.*, 10th Dist. No. 23AP-81, 2023-Ohio-4677, ¶ 46 (stating that "[r]emoval of a magistrate falls within the discretion of the judge who referred the matter to the magistrate").

{¶ 30} Mr. Akarah never filed a motion to disqualify the court's magistrate for bias. As such, Mr. Akarah waived his claim that the magistrate was biased. *Barton* at ¶ 42. Moreover, to the extent Mr. Akarah's claim of magistrate bias concerns the proposed settlement agreement, the record demonstrates the magistrate held the proceedings to enforce the settlement agreement in abeyance once Mr. Akarah indicated he did not agree with the proposed settlement. Additionally, the court, rather than the court's magistrate, issued the summary judgment decision resolving the case.

{¶ 31} Based on the foregoing, we overrule Mr. Akarah's assignment of error E.

## IV. Assignment of Error D – Statute of Limitations

{¶ 32} Mr. Akarah's assignment of error D asserts the Court of Claims erred by finding the case was time-barred. Mr. Akarah contends he learned of ODRC's statement regarding the death of the inmate in August 2020 and timely filed his action in the Court of Claims in February 2021. However, the court resolved Mr. Akarah's defamation claim alleged in Count 1 of his complaint, regarding the death of the inmate, by finding it was subject to an absolute privilege. The court did not find the defamation claim in Count 1 was time-barred. The court found Mr. Akarah's defamation claims in Counts 2 and 3 of his complaint were both time-barred and subject to a qualified privilege. Because we have already determined the court properly found the defamation claims in Counts 2 and 3 were subject to a qualified privilege, we need not further address whether these claims were time-barred as well.

{¶ 33} Accordingly, we find Mr. Akarah's assignment of error D to be moot.

## V. Assignment of Error A – Oral Hearing & Evidence

{¶ 34} Mr. Akarah's assignment of error A asserts the trial court erred by failing to hold an oral hearing in the case and by relying only on evidence presented by ODRC. After ODRC filed its motion for summary judgment, the court issued an order stating it would hold a non-oral hearing on the motion. *See* Ct. of Cl. Loc.R. 4(D) (stating all motions for summary judgment filed pursuant to Civ.R. 56 will be "set for a non-oral hearing date").

{¶ 35} "[T]here is no requirement for an oral hearing on motions for summary judgment." *Huntington Natl. Bank v. Ross*, 130 Ohio App.3d 687, 696 (10th Dist.1998). *Accord Stover v. Wallace*, 10th Dist. No. 95APE06-743, 1996 Ohio App. LEXIS 546, *12 (stating that "Civ.R. 56(C) does not require an oral hearing on every motion for summary judgment"); *Marino v. Oriana House, Inc.*, 9th Dist. No. 23389, 2007-Ohio-1823, ¶ 12. Accordingly, the trial court did not err by failing to hold an oral hearing before ruling on ODRC's motion for summary judgment.

{¶ 36} The trial court followed its Civ.R. 56(C) obligation to determine whether the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," demonstrated a genuine issue of material fact for trial. In its decision, the court addressed the statements contained in Mr. Akarah's pleading and the Civ.R. 56(C) evidence presented

by ODRC. To the extent Mr. Akarah failed to support his response in opposition to summary judgment with evidentiary material authorized by Civ.R. 56(C), the court was not required to consider any additional evidence. *See* Civ.R. 56(C) (providing that "[n]o evidence or stipulation may be considered except as stated in this rule"); *State ex rel. Spencer v. E. Liverpool Planning Comm.*, 80 Ohio St.3d 297, 301 (1997) (stating that, while a court ruling on a motion for summary judgment "may consider evidence other than that listed in Civ.R. 56 when there is no objection, it need not do so").

{¶ 37} Based on the foregoing, we overrule Mr. Akarah's assignment of error A.

## VI. Assignment of Error B – Reason for Termination & Other Nurses

{¶ 38} Mr. Akarah's assignment of error B asserts the trial court omitted from its analysis the fact that he was removed from FMC in 2018 for failing to complete a wound dressing change. In its decision, the court acknowledged that, on November 9, 2018, an ODRC employee informed the third-party staffing agency that Mr. Akarah had been removed from FMC due to "absenteeism and failing to complete a wound care dressing." (Decision at 10.) Accordingly, the court identified ODRC's reasons for removing Mr. Akarah from FMC in November 2018, including his failure to complete a wound dressing change.

{¶ 39} In his assignment of error B, Mr. Akarah also states that two other nurses at FMC failed to complete the same wound dressing change in 2019, ODRC terminated their employment, and the nurses ultimately settled with ODRC. The fact that other nurses may have reached a settlement with ODRC in a different case was not relevant to Mr. Akarah's defamation claims in the present case. *See Sidenstricker v. Miller Pavement Maintenance, Inc.*, 158 Ohio App.3d 356, 2004-Ohio-4653, ¶ 23 (10th Dist.), citing Evid.R. 401, 402 (noting that "[o]nly evidence that is relevant is admissible"). Accordingly, the trial court did not err by failing to address the circumstances surrounding the other nurses.

{¶ 40} Based on the foregoing, we overrule Mr. Akarah's assignment of error B.

## VII. Assignment of Error C – Incident Report

{¶ 41} Mr. Akarah's assignment of error C asserts the trial court erred by failing to ask ODRC to produce the incident report pertaining to the death of the inmate. The trial court was not required to ask the parties to produce evidence. *See Blount v. Schindler Elevator Corp.*, 10th Dist. No. 02AP-688, 2003-Ohio-2053, ¶ 40 (stating the "trial court

was under no obligation to search the record for potentially relevant evidence or to create arguments for appellants based upon that evidence"). Rather, Civ.R. 56 obligates the parties to identify those portions of the record they believe establish the presence, or absence, of a genuine issue of material fact for trial. *Dresher*, 75 Ohio St.3d at 293.

{¶ 42} To the extent Mr. Akarah needed more time to discover the incident report before responding to ODRC's motion for summary judgment, his remedy was to file a motion pursuant to Civ.R. 56(F). *See Prohazka v. Ohio State Univ. Bd. of Trustees*, 10th Dist. No. 03AP-616, 2004-Ohio-1601, ¶ 30 (stating that "[p]ursuant to Civ.R. 56(F), a party who believes that it is unable to adequately oppose a motion for summary judgment by affidavit must submit an affidavit to the court stating the reasons why it is unable to present facts necessary to oppose the motion for summary judgment by affidavit"); *Mootispaw v. Mohr*, 10th Dist. No. 15AP-885, 2016-Ohio-1246, ¶ 10, citing *Fifth Third Mtge. Co. v. Salahuddin*, 10th Dist. No. 13AP-945, 2014-Ohio-3304, ¶ 18 (noting that "[w]hen a party fails to move for a Civ.R. 56(F) continuance, a trial court may grant summary judgment to the moving party even if discovery remains incomplete"). Moreover, as explained above, ODRC's statement to the EEOC regarding the death of the inmate was subject to an absolute privilege. As such, Mr. Akarah fails to demonstrate how the incident report would have altered the court's summary judgment ruling. *See* Civ.R. 61; *Shupe v. Media Distribs., L.L.C.*, 10th Dist. No. 11AP-336, 2012-Ohio-325, ¶ 19.

{¶ 43} Based on the foregoing, we overrule Mr. Akarah's assignment of error C.

**VIII. Conclusion**

{¶ 44} Having overruled Mr. Akarah's assignments of error A, B, C, and E, and finding Mr. Akarah's assignment of error D to be moot, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

———————————